**Chris KOHLER, Plaintiff,**

v.

**FLAVA ENTERPRISES, INC., doing business as House of Flava, Defendant.**

**Case No. 10cv730–IEG (NLS).**

United States District Court, S.D. California.

Sept. 26, 2011.

Scottlynn J Hubbard IV, Peter William Leonard, Law Offices of Lynn Hubbard, Chico, CA, for Plaintiff.

David Warren Peters, Lawyers Against Lawsuit Abuse, San Diego, CA, for Defendant.

### ORDER

### (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

[Doc. No. 99]

### (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

[Doc. No. 97]

IRMA E. GONZALEZ, Chief Judge.

Presently before the Court is the parties' cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Chris Kohler, a paraplegic, brings a civil rights action under the Americans with Disabilities Act and related California statutes. For the reasons stated below, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

### BACKGROUND

Plaintiff is paralyzed from the waist down and requires the use of a wheelchair. [Doc. No. 44, Dep. Tr. of Chris Kohler ("Kohler Dep.") at 14:15–15:14.] Plaintiff testified that, in February 2010, he visited Defendant's retail clothing store, House of Flava, and encountered several barriers. [*Id.* at 16:15–19:6, 65:11–65:22.] Plaintiff testified that the bench in Defendant's dressing room did not allow him to make a diagonal transfer onto it. [*Id.* at 16:15–16:25.] Plaintiff testified that Defendant's lowered checkout counter had items on top of it and under it making it useless to him. [*Id.* at 18:3–18:17, 23:4–24:16, 68:8–68:17.] Plaintiff also testified that he did not see the appropriate disabled signs on Defendant's lowered counter. [*Id.* at 34:19–35:6.] Plaintiff states that during his visit, he purchased a shirt at the regular checkout counter, took pictures of the dressing room and the lowered counter, and then left Defendant's store. [*Id.* at 72:23–74:25.] Plaintiff visited Defendant's store two more times and again encountered barriers although he did not try on or purchase any clothing during those visits. [*Id.* at 75:21–77:14.]

On April 7, 2010, Plaintiff filed the present action against Defendant Flava Enterprises, Inc. [Doc. No. 1.] On February 17, 2011, Plaintiff filed a First Amended Complaint ("FAC") alleging four causes of action: (1) violation of the Americans with Disabilities Act of 1990 ("ADA"); (2) violation of the Disabled Persons Act ("DPA"), California Civil Code § 54; (3) violation of

the Unruh Civil Rights Act ("the Unruh Act"), California Civil Code § 51; and (4) denial of full and equal access to public facilities, in violation of the California Health and Safety Code. [Doc. No. 28.] Plaintiff seeks injunctive relief, declaratory relief, and damages. [*Id.*] Specifically, the FAC alleges that Plaintiff encountered the five following barriers at Defendant's store: (1) the checkout counter did not contain a lowered portion and was too high to accommodate a patron in a wheelchair; (2) the dressing room bench was not 24 inches wide by 48 inches long; (3) the clothing hooks inside the dressing room were mounted too high; (4) the International Symbol of Accessibility was mounted below the checkout counter rather than above it; and (5) there was no sign mounted above the disabled checkstand indicating that it is to remain open at all times for persons with disabilities. [*Id.* ¶ 10.]

## DISCUSSION

### I. Legal Standard for a Motion for Summary Judgment

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. To satisfy this burden, the movant must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322, 106 S.Ct. 2548. Where the moving party does not have the ultimate burden of persuasion at trial, it may carry its initial burden of production in one of two ways: "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir.2000). To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir.2000). The nonmoving party may not rely on the pleadings alone, but must present specific facts creating a genuine issue of material fact through affidavits, depositions, or answers to interrogatories. Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir.2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.*; *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). Moreover, the court is not required " 'to scour the record in search of a genuine issue of triable fact,' " *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996) (citations omitted), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein."

*Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir.2001).

## II. Legal Standard for ADA claims

The Americans with Disabilities Act was enacted "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). "Its passage was premised on Congress's finding that discrimination against the disabled is 'most often the product, not of invidious animus, but rather of thoughtlessness and indifference,' of 'benign neglect,' and of 'apathetic attitudes rather than affirmative animus.'" *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 944–45 (9th Cir.2011) (en banc) (quoting *Alexander v. Choate*, 469 U.S. 287, 295–96, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985)).

Under the ADA, unlawful "discrimination" occurs when features of an accommodation

> subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

42 U.S.C. § 12182(b)(1)(A)(i). In the context of existing facilities, discrimination includes "a failure to remove architectural barriers ... where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv). In the case of newly constructed facilities, compliance with the ADA's antidiscrimination mandate requires that facilities be "readily accessible to and usable by individuals with disabilities." *Id.* § 12183(a)(1).

 "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines ('ADAAG')."

*Chapman*, 631 F.3d at 945. These guidelines "lay out the technical structural requirements of places of public accommodation." *Fortyune v. Am. Multi–Cinema, Inc.*, 364 F.3d 1075, 1080–81 (9th Cir.2004). "The ADAAG's requirements are as precise as they are thorough, and the difference between compliance and noncompliance with the standard of full and equal enjoyment established by the ADA is often a matter of inches." *Chapman*, 631 F.3d at 945–46.

 "To prevail on a Title III discrimination claim, the plaintiff must show that (1)[he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of [his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir.2007). "The ADA authorizes only injunctive relief for disabled individuals who suffer prohibited discrimination and does not provide for the recovery of monetary damages by private individuals." *Hubbard v. Rite Aid Corp.*, 433 F.Supp.2d 1150, 1159 (S.D.Cal.2006) (citing 42 U.S.C. § 12188(a)(2)).

## III. Analysis

Defendant does not appear to dispute elements one or two of Plaintiff's ADA claim-that Plaintiff is disabled within the meaning of the ADA and that Defendant's store is a place of public accommodation. Therefore, the issue presented by the parties' cross motions for summary judgment is whether Plaintiff was denied public accommodations by Defendant due to his disability. In his amended complaint, Plaintiff states that Defendant's store contained five barriers making the store inaccessible. [Doc. No. 28 ¶ 10.] The Court addresses each of the five barriers below.

## A. Height of Checkout Counter

■ The parties move for summary adjudication of Plaintiff's ADA claim that the checkout counter was too high. [*Pl.'s Mot.* at 8–9; *Def.'s Mot.* at 2–10.] Defendant argues that its store contains a lowered checkout counter that meets ADAAG requirements. [*Def.'s Mot.* at 2–5.] Plaintiff argues that even assuming Defendant has a lowered counter, Defendant cannot show that the lowered counter was unobstructed. [*Pl.'s Mot.* at 8.] In response, Defendant argues that there is no requirement for underside clearance at customer service counters. [*Def.'s Mot.* at 6; *Def.'s Opp'n* at 8–9.]

ADAAG section 7.2 provides:

In department stores and miscellaneous retail stores where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 in (915 mm) in length with a maximum height of 36 in (915 mm) above the finish floor.

28 C.F.R. pt. 36, App. A, § 7.2.

■ In 2009, Defendant installed a lowered counter, which is 35 inches high and 36 inches wide. [Doc. No. 103–1, *Declaration of Mark Kim ("Kim Decl.")* ¶ 3, Exs. A–B.] Plaintiff testified that the first time he visited Defendant's store in February 2010 there was a lowered counter at the store. [Doc. No. 44, *Kohler Dep.* at 18:6–18:25, 65:11–65:22.] In addition, Plaintiff

has submitted a picture he took during this visit to the store, which shows the lowered counter. [*Pl.'s Mot.* at 8; Doc. No. 98, *Declaration of Chris Kohler ("Kohler Decl.")* ¶ 2.][1] Plaintiff has presented no evidence showing that the lowered counter was higher than 36 inches. Therefore, there is no genuine dispute of fact that during Plaintiff's visits, Defendant's store possessed a lowered counter that is 35 inches high and 36 inches wide, and the store was in compliance with ADAAG section 7.2.

Plaintiff argues that even if Defendant's store possessed a lowered counter, the counter was inaccessible to him because it was blocked by merchandise, a storage bin, and a waste receptacle. [*Pl.'s Mot.* at 8–9.] In support of this argument, Plaintiff has submitted a picture of the counter that he took during his first visit showing that there was a storage bin and a waste receptacle under the counter and a few items on top of the counter. [*Id.* at 8; *Kohler Decl.* ¶ 2.] Plaintiff also testified about encountering these items during his visits to Defendant's store. [*Kohler Dep.* at 18:3–18:25, 23:25–24:16.]

■ A violation of the ADA can occur where a defendant's business is in compliance with ADAAG requirements, but that defendant does not maintain its compliant features in a useable manner. *See Independent Living Resources v. Oregon Arena Corp.*, 1 F.Supp.2d 1159, 1172–73 (D.Or. 1998); *see also Fortyune*, 364 F.3d at

---

1. Defendant objects to the Declaration of Chris Kohler and the picture of the lowered counter on three grounds. [Doc. No. 113–1 at 2–4.] First, Defendant argues that Plaintiff should not be able to rely on the picture because he has not produced the picture in digital form. [*Id.* at 2–3.] Second, the declaration fails to state that it was taken during his first visit to Defendant's store in February 2010. [*Id.* at 3.] Third, the declaration lacks a proper signature. [*Id.* at 3–4.]

The Court **OVERRULES** Defendant's objections. Defendant has not shown that a digital version of the photograph is needed to oppose Plaintiff's motion for summary judgment. In addition, the declaration states that the photo is "a photo which was taken by me and which accurately depict[s] the counter at the subject House of Flava on February 13, 2010." [*Kohler Decl.* at 3.] Finally, the declaration shows that it was signed by Plaintiff, Chris Kohler. [*Id.*]

1084–85. However, it does not seem that the items shown in Plaintiff's picture and testified about by Plaintiff rendered the lowered counter useless and inaccessible.

■ Defendant argues that there is no ADAAG requirement that the lowered counter contain underside clearance and, therefore, items underneath the counter would not render it inaccessible. [*Def.'s Mot.* at 6; *Def.'s Opp'n* at 8–9.] In an attempt to refute this claim, Plaintiff cites to ADAAG section 4.32.2. [*Pl.'s Opp'n* at 5.] Defendant argues that this section only applies to dining facilities and is inapplicable to customer service counters. [*Def.'s Reply* at 6.]

Section 4.32.2 states that it applies to tables or counters that provide seating space for people in wheelchairs. *See* 28 C.F.R. pt. 36, App. A, § 4.32.2. A checkout counter in a retail store unlike a counter or table in a dining facility is not a counter that is intended to provide seating space for people. The primary purpose of a checkout counter is to allow people to purchase merchandise. A person in a wheelchair should be able to conduct the transaction without underside clearance at the counter, and the Court concludes that section 4.32.2 does not apply to Defendant's lowered counter. Therefore, there is no requirement for underside clearance and the lack of underside clearance does not render the counter inaccessible to Plaintiff.

Because the items below the counter did not render the counter inaccessible to Plaintiff, the lowered counter was in compliance unless the items on top of it rendered the counter inaccessible. The photo submitted by Plaintiff in support of his motion for summary judgment only shows a few items on the counter, and it does not appear that these items would prevent him from using the lowered counter to purchase merchandise. Therefore, the lowered counter was accessible to Plaintiff.

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment on Plaintiff's ADA claim that the lowered counter was too high and inaccessible.

### B. Accessibility Sign on Counter

■ The parties move for summary adjudication of Plaintiff's ADA claim that the lowered counter lacked an International Symbol of Accessibility ("ISA") sign. [*Pl.'s Mot.* at 11; *Def.'s Mot.* at 15–18.] Plaintiff argues that the lowered counter was not properly identified because it lacked an ISA sign as required by ADAAG section 7.3(3). [*Pl.'s Mot.* at 8; Doc. No. 118.] Defendant argues that section 7.3(3) only applies to stores that have checkout aisles, and Defendant's store does not have any checkout aisles. [Doc. No. 119.]

The Court agrees with Defendant. Section 7.3(3), entitled "Check-out Aisles," only requires ISA "[s]ignage identifying accessible check-out aisles." 28 C.F.R. pt. 36, App. A, § 7.3(3). Defendant's store does not have a checkout aisle or checkout aisles. Defendant's store only has a single sales counter with a lowered portion and a raised portion. [*Kim Decl.* Exs. A–B; Doc. Nos 101–102, *Declaration of David Peters ("Peters Decl.")* Exs. A–C, H–L.] Defendant's sales counter is governed by ADAAG section 7.2, entitled "Sales and Service Counters, Teller Windows, Information Counters." *See* 28 C.F.R. pt. 36, App. A, § 7.2. Section 7.2 does not contain a requirement for ISA signage, *see Id.*, and Plaintiff does not argue to the contrary. Because section 7.3(3)'s signage requirement does not apply to Defendant's sales counter, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment on Plaintiff's ADA claim that the lowered counter lacked an ISA sign.

## C. Length of Dressing Room Bench

■ The parties move for summary adjudication of Plaintiff's ADA claim that the dressing room bench was too long, preventing Plaintiff from making a diagonal transfer onto the bench. [*Pl.'s Mot.* at 9–10; *Def.'s Mot.* at 10–13.] Plaintiff argues that Defendant's dressing room bench does not comply with either the 2010 ADAAG standards or the 1991 ADAAG standards. [*Pl.'s Mot.* at 9–10.] Defendant argues that the bench complies with the 1991 ADAAG standards because it exceeds the required dimensions. [*Def.'s Mot.* at 10–13.]

On September 15, 2010, the Department of Justice promulgated new regulations and adopted new ADAAG standards ("the 2010 ADAAG standards"). *See* Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 75 Fed. Reg. 56236 (Sept. 15, 2010) (to be codified at 28 C.F.R. pt. 36). Prior to March 15, 2012, a business owner can choose to comply with either the 2010 standards or the 1991 standards. *Id.* at 56254–55. Therefore, Defendant's dressing room bench is required to meet either the 2010 ADAAG standards or the 1991 ADAAG standards. *See Id.*

The 2010 standards require that a bench in an accessible dressing room comply with section 903. 2010 Standards § 803.4. Section 903.3 provides that benches "shall have seats that are 42 inches (1065 mm) long minimum and 20 inches (510 mm) deep minimum and 24 inches (610 mm) deep maximum." *Id.* § 903.3. Section 903.2 also requires that clear floor space in compliance with section 305 be provided at the end of the bench seat. *Id.* § 903.2 Section 305.3 provides that clear floor space "shall be 30 inches (760 mm) mini-

mum by 48 inches (1220 mm) minimum." *Id.* § 305.3.

Defendant's dressing room bench runs the entire length of the back wall of the dressing room. [*Kim Decl.* ¶ 4, Ex. D; *Def.'s Mot.* at 11.] Therefore, the bench does not contain clear floor space at the end of the bench seat, and the bench does not comply with the 2010 ADAAG standards. *See* 2010 Standards §§ 305.3, 903.2. Accordingly, Defendant's bench is only in compliance with the ADAAG standards if it complies with the 1991 standards.

The 1991 standards provide in Section 4.35.4 that:

> Every accessible dressing room shall have a 24 in by 48 in (610 mm by 1220 mm) bench fixed to the wall along the longer dimension. The bench shall be mounted 17 in to 19 in (430 mm to 485 mm) above the finish floor. Clear floor space shall be provided alongside the bench to allow a person using a wheelchair to make a parallel transfer onto the bench.

28 C.F.R. pt. 36, App. A, § 4.35.4.

The parties agree that the dressing room bench is longer than 48 inches. [*Pl.'s Mot.* at 9–10; *Def.'s Mot.* at 11–12; Doc. No. 103, *Kim Decl.* ¶ 4.] Because the bench is not exactly 48 inches long, it appears that the bench does not comply with the plain language of section 4.35.4. However, section 2.2 of the 1991 standards provides: "Departures from particular technical and scoping requirements of this guideline by the use of other designs and technologies are permitted where the alternative designs and technologies used will provide substantially equivalent or greater access to and usability of the facility." 28 C.F.R. pt. 36, App. A, § 2.2.[2]

---

**2.** Plaintiff argues that Defendant did not plead "equivalent access" as one of its affir-

mative defenses in its answer, and, therefore, it has waived that defense. [*Pl.'s Reply* at 6.]

Defendant argues that a bench can be in compliance with the 1991 standards even if it exceeds 48 inches in length. [*Def.'s Mot.* at 10–11.] In support of this argument, Defendant cites to two summary judgment opinions from this district where the court held that a dressing room bench in excess of 48 inches in length provided at least equivalent access to a bench that is 24 inches by 48 inches. *See Oliver v. J.C. Penny Co.,* No. 09–cv–1658 (S.D.Cal., Order filed May 17, 2010 [Doc. No. 45]); *Kohler v. Chelsea San Diego Finance, LLC,* No. 09–cv–2780 (S.D. Cal., Order filed Dec. 9, 2010 [Doc. No. 202]).

The Court agrees with the analysis in those two opinions. Plaintiff's primary argument in explaining why a longer bench is not equivalent is that a 64 inch bench that runs the full length of the wall prevents him from making a diagonal transfer, which is much easier for Plaintiff to perform than a parallel transfer. [*Pl.'s Mot.* at 2, 9–10; *Pl.'s Reply* at 4–5.] However, section 4.35.4 only mentions that the bench must allow for parallel transfers; it says nothing about diagonal transfers. *See* 28 C.F.R. pt. 36, App. A, § 4.35.4. Plaintiff argues that the 1991 standards implicitly allow for diagonal transfers. [*Pl.'s Reply* at 5.] However, the Court disagrees that there is an implicit requirement for diagonal transfers, when section 4.35.4 explicitly only mentions the need to allow for parallel transfers. *See* 28 C.F.R. pt. 36, App. A, § 4.35.4.

Plaintiff testified that he could have made a parallel transfer onto Defendant's bench. [*Kohler Dep.* at 66:21–67:10, 87:12–87:16.] Therefore, the longer bench provided at least substantially equivalent access to a 48 inch long bench. Accordingly,

the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment on Plaintiff's ADA claim that Defendant's dressing room bench was too long.

### D. Height of the Clothing Hooks in Dressing Room

Plaintiff's amended complaint alleges that the clothing hooks in Defendant's dressing room were mounted too high. [*FAC* ¶ 10.] Defendant moves for summary adjudication of this claim arguing that the clothing hooks were mounted 39 inches above the floor in compliance with ADAAG § 4.2.5. *See* 28 C.F.R. pt. 36, App. A, § 4.2.5 ("the maximum high forward reach allowed shall be 48 in"). [*Def.'s Mot.* at 14–15.] In response, Plaintiff concedes that the hooks are accessible and does not oppose Defendant's motion for summary judgment with respect to this claim. [*Pl.'s Opp'n* at 8; *see also* Doc. No. 46 at 12.] Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's ADA claim that the clothing hooks in the dressing room were mounted too high.

### E. Overhead Accessibility Sign

Plaintiff's amended complaint alleges that the checkout counter lacked an overhead sign indicating that the counter is to remain open at all times for persons with disabilities. [*FAC* ¶ 10.] Defendant moves for summary adjudication of this claim arguing that such a sign is only required for businesses that have checkout aisles, and Defendant's store does not have checkout aisles. *See* 28 C.F.R. pt. 36, App. A, § 7.3(3). Plaintiff does not oppose Defendant's motion for summary judgment

---

However, Plaintiff does not cite to case law stating that "equivalent access" must be plead by Defendant as an affirmative defense. In addition, the Court finds that the defense of

"equivalent access" is contained in Defendant's first and seventh affirmative defenses in its answer. [Doc. No. 13 ¶¶ 55, 61.]

on this claim. [*Pl.'s Opp'n* at 8; *see also* Doc. No. 46 at 12.] Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's ADA claim that the checkout counter lacks an overhead sign indicating that the counter is to remain open at all times for persons with disabilities.

## F. State Law Causes of Action

The parties also move for summary adjudication of Plaintiff's state law causes of action. [*Pl.'s Mot.* at 11; *Def.'s Mot.* at 24–25.] Plaintiff argues that Defendant's conduct in violation of the ADA also violates California's Unruh Act and California's Disabled Persons Act ("DPA"), which are coextensive with the ADA. [*Pl.'s Mot.* at 11.] Defendant argues that because Plaintiff has not produced sufficient evidence showing that it violated the ADA, Plaintiff is not entitled to summary judgment on its state law claims. [*Def.'s Opp'n* at 17–18.] Defendant also alleges that because it is entitled to summary judgment on Plaintiff's ADA claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c). [*Def.'s Mot.* at 24–25.]

■ The Unruh Act and the DPA "entitle disabled individuals to full and equal access to public accommodations." *Californians for Disability Rights v. Mervyn's LLC*, 165 Cal.App.4th 571, 585, 81 Cal. Rptr.3d 144 (2008). The Unruh Act provides:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

CAL. CIV.CODE § 51(b). The DPA provides: "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to ... places of public accommodation, amusement, or resort, and other places to which the general public is invited. ..." CAL. CIV. CODE § 54.1(a)(1).

■ Any violation of the ADA necessarily constitutes a violation of the Unruh Act and the DPA. *Californians for Disability Rights*, 165 Cal.App.4th at 586, 81 Cal.Rptr.3d 144; *Molski*, 481 F.3d at 731. Unlike the ADA, these state law statutes do allow for the recovery of monetary damages. *See* CAL. CIV.CODE §§ 52(a), 54.3(a)

Plaintiff argues that since Defendant's conduct violated the ADA, it also violated the Unruh Act and the DPA. [*Pl.'s Mot.* at 11.] Plaintiff does not provide any other arguments in support of his Unruh Act and DPA claims. [*Id.*] As explained in the previous sections, Defendant is entitled to summary judgment on all of Plaintiff's ADA claims. Because Plaintiff does not provide any other basis for his Unruh Act and DPA claims, Plaintiff is not entitled to summary judgment on those claims, but Defendant is entitled to summary judgment on Plaintiff's Unruh Act and DPA claims. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment on Plaintiff's Unruh Act and DPA claims.

■ Plaintiff's amended complaint also alleges a causes of action for denial of full and equal access to public facilities, in violation of the California Health and Safety Code. [Doc. No. 28 ¶¶ 48–52.] Defendant argues that because it is entitled to summary judgment on Plaintiff's ADA claims, the Court should decline to exer-

cise supplemental jurisdiction over this claim. [*Def.'s* Mot. at 24–25.] Plaintiff does not address this claim in his motion for summary judgment.

 While federal courts may exercise supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367(a), a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). When deciding whether to exercise supplemental jurisdiction, the Court considers judicial economy, convenience and fairness to litigants, and comity with state courts. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Where federal claims have been dismissed, the balance of factors usually tips in favor of declining to exercise jurisdiction over the remaining state law claims and dismissing them without prejudice. *Gini v. Las Vegas Metro. Police Dep't,* 40 F.3d 1041, 1046 (9th Cir.1994). Here, the Court has granted summary judgment for Defendant on all of Plaintiff's ADA claims, therefore, there are no remaining claims over which the Court has original jurisdiction. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. *See* 28 U.S.C. § 1367(c)(3). Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claim for denial of full and equal access to public facilities, in violation of the California Health and Safety Code.

### CONCLUSION

For the reasons above, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment on Plaintiff's claim for violations of the ADA, Plaintiff's claim for violations of the Unruh Act, and Plaintiff's claim for violations of the DPA. The Court **DISMISSES WITHOUT**

**PREJUDICE** Plaintiff's claim for denial of full and equal access to public facilities, in violation of the California Health and Safety Code.

**IT IS SO ORDERED.**