Sandi RUSH, Plaintiff,

v.

HYUN SUK KIM; Dong Hun Kim; Forever 21 Retail Inc.; and Luna Clothing and Company Inc., Defendants.

Case No. SACV 12–00400–CJC(RNBx).

United States District Court,
C.D. California,
Southern Division.

Dec. 10, 2012.

Scottlynn J. Hubbard IV, Khushpreet R. Mehton, and Anthony M. Bettencourt (on the briefs) Law Offices of Lynn Hubbard, Chico, CA, for Plaintiff

Michael S. Orr, Call and Jensen APC, Newport Beach, CA, John Hyongjo Choi, Daniel Kang, Kim Park Choi and Yi APLC, Los Angeles, CA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CORMAC J. CARNEY, District Judge.

### I. INTRODUCTION AND BACKGROUND

On March 14, 2012, Plaintiff Sandi Rush brought a civil rights action against four retail defendants, including Forever 21 Retail, Inc. ("Forever 21"), for purported violations of the Americans with Disabilities Act of 1990 ("ADA") and related California statutes. (Dkt. No. 1.) Ms. Rush is a paraplegic who requires the use of a wheelchair when traveling in public. (Rush Decl. ¶ 2.) Her allegations stem from a visit to a Forever 21 clothing store in Anaheim, California. Ms. Rush alleges that the Forever 21 facility included two barriers that prevented her from enjoying full and equal access to the facility: (1) "The dressing room bench is not either exactly 48 inches long; or a minimum of 42 inches long with 30 inches of clear space at the end, thus making it impossible for Rush to complete a diagonal transfer," and (2) "The International Symbol of Accessibility posted at the entrance is in the wrong location and wrong height." (Dkt. No. 1 ["Compl."] ¶ 19.) With respect to the dressing room bench, the parties agree that the length of the bench at issue is at least 60 inches. (Seijas Decl. ¶ 4; Rush Dec. ¶ 6(c).) Ms. Rush has submitted evidence that the bench spans the entire length of one wall of the dressing room, leaving no space between the bench and the perpendicular walls. (Rush Decl. ¶ 6(c); Exh. C.) With respect to the International Symbol of Accessibility ("ISA"), Ms. Rush admits that Forever 21 had an ISA on the center door of at least one entrance to the store. (Rush Decl. ¶ 6(b).) However, she contends that the ISA was "much lower than I would have expected and placed in an unusual area." (*Id.*) Before the Court is Forever 21's motion for summary judgment. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Forever 21's motion.[1]

### II. DISCUSSION

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R.Civ.P. 56(a). The Court may award summary judgment where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.; see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Id.* In considering a motion for summary judgment, the Court's function is not to weigh the evidence and determine the truth of the matter or make credibility determinations, as those are jury functions. *Id.* at 255, 106 S.Ct. 2505. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.; see also T.W. Elec. Serv., Inc. v. Pac. Elec. Con-*

---

1. Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed.R.Civ.P. 78; Local Rule 7–

15. Accordingly, the hearing set for December 17, 2012 at 1:30 p.m. is hereby vacated and off calendar.

*tractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548; *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir.2010). Where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548. Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see also Oracle Corp.,* 627 F.3d at 387.

## A. Dressing Room Bench

The ADA prohibits discrimination against individuals on the basis of disability in the "full and equal enjoyment" of goods, services, and accommodations at a "place of public accommodation," such as a retail store. 42 U.S.C. § 12182(a). For facilities that have been altered or constructed after January 26, 1993, discrimination includes the failure to design and construct facilities or the failure to make alterations to the facility that render it "readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a). "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines." *Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 945 (9th Cir.2011). The ADA Accessibility Guidelines ("ADAAG") is developed by the Architectural and Transportation Barriers Compliance Board (the "Access Board"), an independent federal agency composed of thirteen members of the public appointed by the President and the heads of twelve federal agencies. 29 U.S.C. § 792(a)(1). The DOJ is required to promulgate regulations consistent with the Access Board's guidelines, although the regulations need not be identical to the guidelines. The Access Board published a final draft of its first proposed ADAAG in July 1991 (the "1991 ADAAG"), which was then adopted by the DOJ. *See* 28 C.F.R. Part 36 App. D.[2]

■ "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 730 (9th Cir.2007). Under the 1991 ADAAG, "[e]very accessible dressing room shall have a 24 in by 48 in ... bench fixed to the wall along the longer dimension.... Clear floor space shall be provided along-

---

2. The Access Board completed a comprehensive update of the ADAAG in 2004. The updated guidelines were adopted by the DOJ in 2010, and went into effect on March 15, 2012 (the "2010 ADAAG"). The 2010 ADAAG includes a "safe harbor" provision, which states: "Elements that have not been altered in existing facilities on or after March 15, 2012 and that comply with the corresponding technical and scoping specifications for those elements in the 1991 Standards are not required to be modified in order to comply with the requirements set forth in the 2010 Standards." 28 C.F.R. § 36.304. Because Forever 21's facility was constructed prior to March 15, 2012, and no alterations have been made to it since that date, it falls under the safe harbor provision. Therefore, Forever 21 is not in violation of the ADA if its facility complies with the 1991 ADAAG.

side the bench to allow a person using a wheelchair to make a parallel transfer onto the bench." 28 C.F.R. Part 36, App. D § 4.35.4. The 1991 ADAAG also includes an "equivalent facilitation" provision, which provides that "[d]epartures from particular technical and scoping requirements of this guideline by the use of other designs and technologies are permitted where the alternative designs and technologies used will provide substantially equivalent or greater access to and usability of the facility." *Id.* § 2.2.[3]

■ Forever 21 argues that it is in compliance with the ADA because the 1991 ADAAG requires a *minimum* length of 48 inches. Therefore, Forever 21 argues, its 60 inch bench complies with the regulation. However, the plain language of the regulation suggests otherwise. The regulation states that the bench "shall" be "24 in by 48 in," without any qualifiers. *Id.* § 4.35.4. Had the drafters intended, they could have stated that the requirement of 48 inches is a "minimum" requirement, or that the bench is required to be "at least" 48 inches in length. In fact, the 1991 ADAAG contains numerous examples of the use of such language. *See, e.g., id.* §§ 4.13.5 ("Doorways shall have a minimum clear opening of 32 in."), 5.15.5 ("Such units shall also have a minimum clear floor space 30 in by 48 in."), 4.19.2 ("[L]avatories .... [shall provide] a clearance of at least 29 in."). The absence of such language suggests the requirement that a bench be 48 inches is an exact requirement.

Forever 21 argues that even if the 1991 ADAAG requires a bench measuring exactly 48 inches, its longer bench complies with the ADA under the "equivalent facilitation" provision because it provides "sub-

stantially equivalent or greater access to and usability" of the dressing room. In response to this argument, Ms. Rush has provided evidence that the additional bench length is actually harmful in that it prevented her from making a diagonal transfer onto the bench. (Pl.'s Mem. at 10.) Ms. Rush describes a diagonal transfer: "[A diagonal transfer] is performed when the corner of my wheelchair abuts the corner of a bench. The 45 degree rotation of my body happens naturally as I transfer my body weight from one shoulder to the other and slide diagonally onto the bench." (Rush Decl. ¶ 6(e).) Ms. Rush notes that a diagonal transfer is "less difficult than a parallel transfer because [her] body follows the line of support produced by [her] shoulders." (*Id.*) Because the bench in Forever 21 spanned the entire length of the dressing room, it was impossible for Ms. Rush to complete such a transfer. Under the 1991 ADAAG, a dressing room is required to provide enough space to make a 180–degree turn, which amounts to a clear space of at least 60 inches in diameter. 28 C.F.R. Part 36, App. D §§ 4.35.2, 4.2.3. Therefore, if the dressing room were equipped with a 48 inch long bench, a corner of the bench would be exposed by which Ms. Rush could potentially abut her wheelchair to perform a diagonal transfer. This is sufficient to show a prima facie case for a violation of the ADA.

Forever 21 provides no evidence supporting its argument for "equivalent facilitation." Instead, it points to *Kohler v. Flava Enterprises, Inc.,* 826 F.Supp.2d 1221 (S.D.Cal.2011) for the proposition that a longer dressing room bench provides "equivalent facilitation" as a matter of law. In *Kohler,* the court rejected an

---

3. The parties agree that Forever 21's dressing room was not in compliance with the 2010 ADAAG. The 2010 ADAAG requires that a bench be "42 inches ... long minimum."

§ 903.3. It also requires clear floor or ground space of at least 30 inches by 48 inches "at the end of the bench seat and parallel to the short axis of the bench." *Id.* § 903.2.

almost identical argument regarding diagonal transfers. The court reasoned that the 1991 ADAAG only explicitly requires that a bench be accessible via parallel transfers, and rejected the argument that it implicitly requires accessibility via diagonal transfers. *Id.* at 1230. Because the Court found that a longer bench is as good, or even better, at allowing for parallel transfers, it granted summary judgment in favor of the defendant. *Id.; see also Martinez v. Columbia Sportswear USA Corp.,* 859 F.Supp.2d 1174, 1180–81 (E.D.Cal.2012) (following *Kohler* and granting summary judgment for defendant in a similar case). However, another court has held that the issue of "equivalent facilitation" with respect to the length of a dressing room bench is a matter of fact that cannot be resolved on summary judgment. *See Strong v. Horton Plaza, LP, et al.,* Case No. 3:09–cv–2901–JM(NLSx), Doc. No. 82, at 4–5 (S.D.Cal. Apr. 29, 2010) ("Whether a longer bench provides equivalent access to wheelchair-bound customers is a question of fact that cannot be determined on summary judgment."). The Court agrees with this approach. The fact that the length requirement in the 1991 ADAAG is so exact suggests that the drafters believed that a 48 bench would provide some benefit that a shorter or longer bench would not. Here, Ms. Rush has presented evidence that the longer bench is harmful in that it prevents diagonal transfers. This is sufficient to create a genuine issue of fact as to whether the longer bench amounts to an "equivalent facilitation."

**B. ISA**

■ Forever 21 moves for summary judgment on Ms. Rush's ISA claim arguing that the 1991 ASAAG does not require that it post an ISA. The 1991 ASAAG requires that an ISA be posted on "[a]ccessible entrances when not all are accessible." 4.1.2(7)(c). Forever 21 has submitted evidence that all of its entrances are maintained by automatic doors, therefore making them all "accessible." (Seijas Decl. ¶ 3.) Ms. Rush does not dispute this. Instead, she argues that if a sign is posted, even if it is not required to be posted, it must comply with § 4.30.6 and be at least 60 inches above the floor, free of obstructions within three inches of the sign, and exactly six inches in height. (Pl.'s Mem. at 14.) Ms. Rush has submitted evidence that Forever 21 posted a sign at one of its entrances that is not in compliance with § 4.30.6. However, § 4.30.6 only applies to signs displaying permanent identification for rooms and spaces. ISAs must only comply with § 4.30.7, which provides no requirements related to distance off the floor, obstructions, or height. Ms. Rush does not allege that Forever 21 violated § 4.30.7. Therefore, even if Forever 21 is required to post an ISA, the evidence shows that it has complied with the requirements under the 1991 ASAAG.

Ms. Rush also argues that in addition to the 1991 ASAAG, the ISA must comply with state law requirements, including the California Business Code ("CBC"). Ms. Rush states that she is not certain which version of the CBC applies to Forever 21's facility, but she notes that "most of the recent versions of the CBC require signage at *every* accessible entrance." (Pl.'s Mem. at 15(emphasis in original).) However, Ms. Rush has shown no evidence that any of Forever 21's entrances lack proper signage. In fact, Ms. Rush has provided photographs that clearly show an ISA affixed to the automatic doors at one entrance. (Rush Decl. Exhs. A, B.) Ms. Rush has provided no evidence that any of the other entrances lack an ISA, and therefore, cannot show that Forever 21 has violated state law.

**III. CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN**

**PART** Forever 21's motion for summary judgment.