203 F.3d 610 (9th Cir. 2000)
 H.C., a minor, appearing by her next friend Gale Lynn Gordon; M.D. & IDELLE CLARKE, Plaintiffs-Appellants,
v.
CAROL KOPPEL, Judge pro tem of the Superior Court for the County of Los Angeles; DIANNA GOULD-SALTMAN, Esq.; LOS ANGELES COUNTY SUPERIOR COURT, Defendants-Appellees.
 No. 99-55029
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted October 13, 1999
Decided February 11, 2000
 
 COUNSEL: Cynthia E. Gitt, Epstein, Becker & Green, Los Angeles, California; Richard L. Ducote, New Orleans, Louisiana, for the plaintiffs-appellants.
 Frederick R. Bennett, Assistant County Counsel, Los Angeles, California; Carol A. Sobel, Santa Monica, California, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California; Dickran M. Tevrizian, District Judge, Presiding D.C. No. CV-98-06244-DT
 Before: Sidney R. Thomas, Barry G. Silverman and Kim McLane Wardlaw, Circuit Judges.
 OPINION
 THOMAS, Circuit Judge:
 
 
 1
 In this case, plaintiffs seek to invoke the power of the federal courts to alter the course of pending state custody proceedings. We conclude that, as to the claims that are not moot, Younger abstention requires the federal courts to refrain from interference.
 
 
 2
 * H.C., a minor girl, is the subject of a bitter custody dispute in Los Angeles County Superior Court between her mother, Idelle Clarke, and her father, Ovando Cowles. Los Angeles County Superior Court Judge Sandoz initially awarded custody to Clarke, providing Cowles with limited supervised visitation. Attorney Dianna Gould-Saltman acted as H.C.'s guardian ad litem.
 
 
 3
 During the prolonged custody proceedings, Judge Sandoz fell ill and Judge Koppel was assigned to the case pro tempore. On June 2, 1998, at a hearing noticed only the preceding day, but with counsel for all parties present, Judge Koppel issued an order immediately transferring custody of H.C. pendente lite from Clarke to Cowles, citing concerns about Clarke's "flight risk." The order also barred all contact between H.C. and Clarke, and bailiffs escorted Clarke to her car. Judge Koppel based her order on an ex parte conversation with the court-appointed psychiatrist.
 
 
 4
 Clarke petitioned the Court of Appeal of the State of California, Second Appellate District, for a writ reversing Judge Koppel's order. The Court of Appeal denied the writ application on July 16, 1998. Clarke then filed a petition for review, or in the alternative, for remand to the Court of Appeal for rehearing, in the California Supreme Court on July 27. The California Supreme Court denied the petition on September 2. Meanwhile, on August 13, 1998, Judge Sandoz returned to the case (replacing Judge Koppel) and held a hearing on the June 2 order, which he modified to allow occasional supervised visitation by Clarke.
 
 
 5
 On August 3, 1998, Clarke filed a complaint in federal district court against the Superior Court, Judge Koppel, and guardian ad litem Gould-Saltman. The complaint sought an injunction (1) ordering the Superior Court and Judge Koppel to vacate all orders rendered on and after the June 2 hearing, (2) ordering Judge Koppel's recusal from the case, and (3) enjoining the Superior Court, Judge Koppel and guardian ad litem Gould-Saltman from interfering with Clarke's custody of H.C. without following specified procedures.
 
 
 6
 Defendants moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim under Rule 12(b)(6). The district court granted the Rule 12(b)(1) motion on October 10, 1998, holding that the Rooker-Feldman doctrine[1] prevented the federal district court from reviewing the final decision of a state court. Clarke then appealed.
 
 II
 
 7
 A case is moot where the issues before the court no longer present a live controversy or the parties lack a cognizable interest in the outcome of the suit. See Murphy v. Hunt, 455 U.S. 478, 481 (1982). "To qualify as a case fit for federalcourt adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) (internal quotations and citations omitted). Because Judge Koppel has concluded her temporary assignment, the claims for relief (a) seeking her disqualification, and (b) directing her to take certain actions and refrain from others, are moot. Likewise, to the extent that the suit seeks vacation of state court orders that have already been modified, the action is moot.
 
 III
 
 8
 Plaintiffs' claim seeking to enjoin the defendants against further interference with Clarke's custody arguably presents a live controversy. The district court dismissed this claim on the basis of the Rooker-Feldman doctrine, finding that because the relief sought was the vacation of a state judgment in a particular case, the federal court action was "inextricably intertwined" with the state court rulings. As the parties made clear at oral argument, however, the state proceedings are ongoing. Because we are not asked to review the merits of a final state judgment, but rather to enjoin ongoing state proceedings, we conclude that principles of abstention rather than Rooker-Feldman, govern this case. See Pennzoil Co. v. Texaco, 481 U.S. 1, 10 (1987) (requiring Younger abstention, instead of applying Rooker-Feldman , in S 1983 challenge to ongoing state civil proceedings). The record before us indicates that the Los Angeles County Superior Court has yet to enter a final judgment, although the plaintiffs petitioned for review in the California appellate courts. Nor are we asked to review a final state judgment of an order of an interlocutory nature. The order at issue could be, and in fact was, modified by the trial court. Thus, there is no final state judgment or order to which the Rooker-Feldman doctrine might relate and we need not reach the question of the doctrine's applicability to this action.
 
 
 9
 Therefore, we consider whether the district court more properly should have invoked abstention pursuant to Younger v. Harris, 401 U.S. 37 (1971), as the basis for its dismissal. See Aiona v. Judiciary of the State of Hawaii, 17 F.3d 1244, 1250 n.10 (9th Cir. 1994). We may do so for the first time on appeal because Younger abstention may be raised sua sponte at any point in the appellate process. See Bellotti v. Baird, 428 U.S. 132, 143 n.10 (1976); The San Remo Hotel v. City & County of San Francisco, 145 F.3d 1095, 1103 n.5 (9th Cir. 1998).
 
 
 10
 The Supreme Court in Younger "espouse[d] a strong federal policy against federal-court interference with pending state judicial proceedings." Middlesex County Ethics Comm. v. Garden State Bar Ass'n., 457 U.S. 423, 431 (1982). "Absent extraordinary circumstances, Younger abstention is required if the state proceedings are (1) ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims." San Remo Hotel, 145 F.3d at 1103; see also Woodfeathers, Inc. v. Washington County, Oregon, 180 F.3d 1017, 1020 (9th Cir. 1999). When the case is one in which the Younger doctrine applies, the case must be dismissed. See Delta Dental Plan of Cal., Inc. v. Mendoza, 139 F.3d 1289, 1294 (9th Cir. 1998).
 
 
 11
 The requirement that state proceedings be ongoing is satisfied. Indeed, the plaintiffs' claim is predicated on that fact, because it seeks an order requiring procedural due process to be observed in the future course of the litigation.
 
 
 12
 Important state interests also are implicated. "Family relations are a traditional area of state concern. " Moore v. Sims, 442 U.S. 415, 435 (1979); see also Morrow v. Winslow, 94 F.3d 1386, 1397 (10th Cir. 1996). In addition, a state has a vital interest in protecting "the authority of the judicial system, so that its orders and judgments are not rendered nugatory." Juidice v. Vail,430 U.S. 327, 336 n.12 (1977). This is a particularly appropriate admonition in the field of domestic relations, over which federal courts have no general jurisdiction, see Ankenbrandt v. Richards, 504 U.S. 689, 697701 (1992), and in which the state courts have a special expertise and experience. See Hisquierdo v. Hisquierdo, 439 U.S. 572, 581 (1979).
 
 
 13
 The plaintiffs have an adequate state forum in which to pursue their federal claims. In fact, they have already raised some of the same due process issues in the California appellate courts. Plaintiffs may appeal through those courts after final judgment.
 
 
 14
 This is precisely the type of case suited to Younger abstention. See Mann v. Conlin, 22 F.3d 100, 106 (6th Cir. 1994) (holding that Younger abstention was appropriate in S 1983 action alleging that a state court judge violated plaintiff's due process rights in custody battle). Plaintiffs desire wholesale federal intervention into an ongoing state domestic dispute. They seek vacation of existing interlocutory orders, and a federal injunction directing the future course of the state litigation. This is not the proper business of the federal judiciary. Accordingly, Younger abstention is appropriate as to the only issue which is not already moot. We affirm the district court's dismissal of the case.
 
 AFFIRMED
 
 
 Notes:
 
 
 [1]
 The doctrine derives its name from two Supreme Court cases decided sixty years apart. The first, Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923), held that, by federal statute, jurisdiction over appeals from state courts lies exclusively in the Supreme Court and is beyond the original jurisdiction of federal district courts. The second, District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486-87 (1983), held that this jurisdictional bar extends to particular claims "inextricably intertwined" with those a state court has already decided.
 
 
 SILVERMAN, Circuit Judge, concurring:
 
 15
 As I see it, there were two ways to skin this cat. I agree with the majority that the district court could have abstained under Younger v. Harris. However, I also agree with the district judge that the Rooker-Feldman doctrine applies here, i.e., that this S 1983 lawsuit was a transparent attempt by a losing party to obtain federal court review of the California Superior Court's pendente lite child custody order after unsuccessfully appealing to the California Court of Appeal and the California Supreme Court.
 
 
 16
 The alleged denial of due process complained of in the federal lawsuit--for which plaintiff sought the setting aside of the California court's temporary custody order--was inextricably intertwined with the California judicial proceeding that resulted in the order. I agree with Judge Tevrizian that under the Rooker-Feldman doctrine, the district court lacked subject matter jurisdiction in the circumstances. Dubinka v. Judges of the Superior Court, 23 F.3d 218 (9th Cir. 1994); Worldwide Church of God v. McNair, 805 F.2d 888 (9th Cir. 1986).