Byron CHAPMAN, Plaintiff,

v.

**PIER 1 IMPORTS (U.S.) INC., Defendant.**

No. CIV. S–04–1339 LKK/DAD.

United States District Court, E.D. California.

June 27, 2012.

Scottlynn J. Hubbard, IV, Peter William Leonard, Daniel T. Watts, Law Offices of Lynn Hubbard, Chico, CA, for Plaintiff.

Roland M. Juarez, Christiane A. Roussell, Los Angeles, CA, for Defendant.

## ORDER

LAWRENCE K. KARLTON, Senior District Judge.

### I. INTRODUCTION

Plaintiff's Second Amended Complaint asserts one claim under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181–89 ("Public Accommodations and Services Operated by Private Entities"), against defendant Pier 1 Imports (U.S.), Inc. ("Pier 1"),[1] along with several California state claims. Plaintiff seeks injunctive relief under the ADA and monetary relief under the state claims.

1. The complaint alleges: (1) that plaintiff was denied the "full and equal enjoyment" of defendant's facility, in violation of 42 U.S.C. § 12182(a); (2) that Pier 1's facility was not designed to be "readily accessible to and usable" by the disabled, in violation of 42 U.S.C. § 12183(a)(1); (3) that Pier 1's facility was altered in a manner that failed to make the facility accessible, in violation of 42 U.S.C. § 12183(a)(2); and (4) that Pier 1 failed to make "reasonable modifications" in their policies, practices or procedures needed to afford reasonable access to the facility to the disabled, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii).

2. The state claims are entirely dependent on the federal claims. The Second Amended

The parties have cross-moved for summary judgment. For the reasons that follow, defendant's motion for summary judgment (and other ancillary motions) will be denied, and plaintiff's cross-motion for summary judgment will be granted.

### II. BACKGROUND

#### A. The Original Complaint.

■ Plaintiff filed his original complaint on July 13, 2004, asserting claims under the federal ADA, as well as California state claims under the Unruh Act (Cal. Civ.Code § 51), and The Disabled Persons Act (Cal. Civ.Code §§ 54 & 54.1).[2] The complaint alleged the existence of architectural barriers in the store that violated his rights under the ADA.

#### B. First Cross–Motions for Summary Judgment.

The parties filed their first cross-motions for summary judgment in 2005. This court determined, first, that Chapman's standing was not restricted to those barriers he had personally encountered. *Chapman v. Pier 1 Imports,* 2006 WL 1686511 at *4–5 (E.D.Cal.2006). The court further held that Chapman was not limited to those barriers he had alleged in his com-

Complaint does not allege any conduct beyond that which is alleged to violate the ADA. The Unruh Act provides that conduct violative of the ADA is also a violation of state law. Cal. Civ.Code § 51(f) ("A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101–336) shall also constitute a violation of this section"). The Disabled Persons Act provides the same. Cal. Civ. Code § 54(c) ("A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101–336) also constitutes a violation of this section"); 54.1(d) ("A violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101–336) also constitutes a violation of this section").

plaint, and that defendant had fair notice of them by the time the summary judgment motions were filed. *Id.*, at *4–5. On the merits, this court partially granted and partially denied each party's motions.[3]

### C. The Appeal.

On appeal, the initial Ninth Circuit panel found that Chapman had standing as to those barriers he had actually encountered, but lacked standing as to any unencountered barrier which did not deter him from re-entering the store. *Chapman v. Pier 1 Imports (U.S.) Inc.,* 571 F.3d 853 (9th Cir.2009).

On en banc review, the Ninth Circuit agreed with this court that Chapman had standing to sue for injunctive relief as to barriers he had encountered, but also as to "other barriers related to his disability, even if he is not deterred from returning to the public accommodation at issue." *Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 944 (9th Cir.2011) (en banc). Thus, even in the absence of actual deterrence, Chapman has standing if he demonstrates "injury-in-fact coupled with an intent to return to a noncompliant facility." *Id.* The Ninth Circuit also agreed that after establishing standing as to encountered barriers, Chapman "may also sue for injunctive relief as to unencountered barriers related to his disability." *Id.*

The Ninth Circuit vacated this court's decision and remanded for dismissal however, because Chapman failed to establish that he "personally suffered discrimination as defined by the ADA as to encountered barriers on account of his disability." *Id.*

### D. The Remand.

Although the Ninth Circuit instructed this court to dismiss the complaint for lack of federal jurisdiction, plaintiff sought leave to amend his complaint. It was not clear if this was permitted by the Ninth Circuit mandate, and so this court sought clarification. The Ninth Circuit ultimately clarified that the court could grant leave to amend, in its discretion. The court granted leave to amend the complaint.

### E. The Amended Complaint.

■ Plaintiff filed a First Amended Complaint, and ultimately was granted leave to amend that complaint. The Second Amended Complaint, the operative complaint here, specifically alleges that Chapman visited the Pier 1 store at 2070 Harbison Drive in Vacaville, California, and encountered barriers that interfered with his ability to use and enjoy the facility. Those barriers are: (1) a customer service counter that was cluttered with merchandise;[4] and (2) store aisles that are

---

**3.** The court dismissed the claim for improper or missing signs designating "permanent room and spaces," finding that Chapman lacked standing. *Chapman,* 2006 WL 1686511 at *9.

The court granted summary judgment to defendant on the claims relating to: ten alleged barriers for which there was simply no evidence (*id.,* at *8); blocked routes to the restroom and emergency exit, as the evidence showed these were only temporary in nature (*id.,* at *9–10); and the force required to open the entrance door (*id.,* at *11).

The court granted summary judgment to Chapman on the claims involving: improper posting of "ISA signage" on the store's en-

trance doors (*id.,* at *9); improper "dimensional tolerances" (*id.,* at *11); and the minimum 36″ aisle width requirement (*id.,* at *12). The court denied summary judgment on plaintiff's claims relating to: the placement of the International Symbol of Accessibility ("ISA") (*id.,* at *11); the Pictogram on the men's restroom wall (*id.,* at *12–13); and the pressure required to operate the men's restroom door (*id.,* at *13).

**4.** The complaint is less than crystal clear on this allegation. However, both parties seem to interpret it in the manner just described. It appears that plaintiff is not complaining that the accessibility counter was the wrong height.

too narrow, that is, less than 36 inches wide, because they too, are cluttered with merchandise and other obstructions. These allegations are sufficient to establish Chapman's standing to sue under the Ninth Circuit's mandate, since he now identifies which barriers he actually encountered and how he was injured by them. Defendant does not argue lack of standing on these cross-motions.

Chapman also alleges that defendant is in violation of California's Health & Safety Code, Part 5.5 (§§ 19955 *et seq.*), and Govt. Code § 4450, which relate to California's standards for making buildings accessible.

### F. The Current Cross–Motions.

Defendant moves for summary judgment on the ADA claims on three grounds: (1) the accessible counter and the aisles were completely clear on January 30, 2012, rendering plaintiff's claims moot; (2) any obstructions on the counter or in the aisles were "movable" or "were only temporary," and thus did not violate the ADA; and (3) Chapman has no "competent evidence" of any blockage of the accessibility counter. As for the claim under the California Health & Safety Code, defendant asserts that plaintiff "cannot establish any violation of state accessibility standards."

Chapman cross-moves for "summary judgment or partial summary judgment," although he does not specify which claim or claims he seeks judgment upon.[5] Since his brief addresses the ADA, the court infers that Chapman seeks summary judgment on the claims relating to the ADA

claim, as well as the Unruh Act, and The Persons with Disabilities Act (as noted above, both state claims are established if the ADA claim is established).[6] Chapman asserts that the accessibility counter and the store's aisles were regularly blocked by merchandise. He further asserts that these blockages were not temporary, "but a systematic pattern of abuse against the disabled."

### III. STANDARDS

#### A. Summary Judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Ricci v. DeStefano,* 557 U.S. 557, 586, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (it is the movant's burden "to demonstrate that there is 'no genuine issue as to any material fact' and that they are 'entitled to judgment as a matter of law' "); *Walls v. Central Contra Costa Transit Authority,* 653 F.3d 963, 966 (9th Cir.2011) (per curiam) (same).

Consequently, "[s]ummary judgment must be denied" if the court "determines that a 'genuine dispute as to [a] material fact' precludes immediate entry of judgment as a matter of law." *Ortiz v. Jordan,* 562 U.S. ——, 131 S.Ct. 884, 891, 178 L.Ed.2d 703 (2011), *quoting* Fed.R.Civ.P. 56(a); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,* 657 F.3d 936, 942 (9th Cir.2011) (en banc), *cert. de-*

---

**5.** Defendant moves to preclude plaintiff from moving for summary judgment, arguing that plaintiff missed the deadline for filing the cross-motion by one day. That motion will be denied. Defendant also moves to strike portions of plaintiff's declaration as "legal conclusions." The court can discern which assertions are factual and which are legal without striking portions of the declaration. That motion will also be denied.

**6.** Chapman's brief says nothing about this fourth claim, relating to California's Health & Safety Code and the Gov't Code. It thus appears that Chapman does not seek summary judgment on that claim. To the degree Chapman does move for summary judgment on his fourth claim, it will be denied.

*nied,* 565 U.S. ——, 132 S.Ct. 1566, 182 L.Ed.2d 168 (2012) (same).

Under summary judgment practice, the moving party bears the initial responsibility of informing the district court of the basis for its motion, and "citing to particular parts of the materials in the record," Fed.R.Civ.P. 56(c)(1)(A), that show "that a fact cannot be ... disputed." Fed. R.Civ.P. 56(c)(1); *Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation),* 627 F.3d 376, 387 (9th Cir.2010) ("The moving party initially bears the burden of proving the absence of a genuine issue of material fact"), *citing Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the non-moving party to establish the existence of a genuine issue of material fact. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Oracle Corp.,* 627 F.3d at 387 (where the moving party meets its burden, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial"). In doing so, the non-moving party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed.R.Civ.P. 56(c)(1)(A).

A wrinkle arises when the non-moving party will bear the burden of proof at trial. In that case, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.,* 627 F.3d at 387.

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls,* 653 F.3d at 966. Because the court only considers inferences "supported by the evidence," it is the non-moving party's obligation to produce a factual predicate as a basis for such inferences. *See Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. 1348 (citations omitted).

**B. Title III(ADA) Discrimination Claim—Elements.**

■ To prevail on his Title III discrimination claim, Chapman must show that (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; [7] and (3) Chapman was denied public accommodations (that is, full and equal treatment) by the defendant because of his disability. *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 730 (9th Cir. 2007), *citing* 42 U.S.C. §§ 12182(a)-(b); *Chapman,* 2006 WL 1686511 at *7.

**ANALYSIS**

**I. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**A. Tracey Snow Declaration.**

■ Defendant supports its summary judgment motion with, among other things, the Declaration of Tracy Snow (Dkt. No. 185), the store manager at the

---

**7.** The first two elements are undisputed in this case. *See Chapman,* 2006 WL 1686511 at *7.

Vacaville store. Plaintiff objects to the use of this declaration because defendant never identified Snow as a person with knowledge during discovery. Although plaintiff does not explain the problem, it would appear that plaintiff therefore never had the opportunity to interview or depose Snow, and thus her Declaration is an unfair surprise to them.

Plaintiff is correct. Snow unsurprisingly is not identified in defendant's October 11, 2004 "Initial Disclosures" pursuant to Fed.R.Civ.P. 26(a)(1)(A), because Snow did not yet work there. However, defendant did not identify *anyone* with knowledge in its initial disclosures, and never supplemented the disclosures to add Snow. On February 21, 2005, defendant answered Interrogatories that clearly asked for the names of persons with knowledge. *See* Dkt. No. 28–13 at No. 6. Defendant did not provide the name of Snow or anyone else. On May 6, 2005, defendant supplemented its interrogatory responses by stating that it was not aware of any architectural barriers. *See* Dkt. No. 28–14 at No. 6. However, it did not provide the name of any person with knowledge. Defendant apparently never supplemented its interrogatory responses to identify Snow as a person with knowledge.

Defendant did, however, bury deep in its Interrogatory responses, in response to an inquiry about affirmative defenses, that an unidentified "Store Manager" knew about Pier 1's *policies*. *See* Dkt. No. 28–13 at No. 12. Certainly, plaintiff should have

inquired further and found out that Snow is the store manager. But defendant did not give any indication that she was a *percipient* witness about the cluttered or uncluttered state of the accessibility counter, and whether the aisles were blocked with merchandise and other materials. However, much of her Declaration is about those matters. Defendant hid this witness—albeit in plain view—by not naming her as a witness in response to any of the interrogatories directed to the basics of plaintiff's affirmative case, where she is the obvious percipient witness, and by including her only in response to the request for information about affirmative defenses.

Rule 37(c)(1), Fed.R.Civ.P. provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial," unless excused.[8] Defendant does not dispute that Snow was never previously identified, and in fact, does not address this issue at all. It is unfair to consider the Snow Declaration on this motion, when plaintiff has had no reasonable opportunity to interview, depose, or otherwise conduct discovery of her.

Accordingly, plaintiff's motion to strike the Snow Declaration is **GRANTED**.

## B. ADA Claims

### 1. Obstructions—Counter and Aisles [9]

The Second Amended Complaint involves defendant's store at 2070 Harbison

---

8. The rule does not require a motion. However, on motion, the court may impose alternate sanctions. Fed.R.Civ.P. 37(c)(1)(A)-(C).

9. Defendant engages in separate discussions of (1) whether the accessible counter is obstructed and (2) whether the aisles are obstructed. The court discusses them together. It is true that the counter and the aisles have separate technical requirements. The accessible counter must be no taller than 36 inches

in height, and the aisles must be no narrower than 36 inches in width. However, Chapman does not challenge whether the technical requirements are met as to the counter or the aisles. He alleges that *both* are obstructed with merchandise, plants and other materials such that he is unable to use them. The law governing obstructions does not distinguish between an obstructed counter and an obstructed aisle. Neither will this court, except where it is necessary to do so.

Drive in Vacaville, California. *See* Plaintiff's Response to Defendant's Statement of Undisputed Facts ("PRDUF") ¶ 1 (Dkt. No. 186–2). There are two sales counters at the store, and of course, several aisles. One of the counters is designed to be used by Pier 1's wheelchair-bound customers (the "accessible sales counter"). PRDUF ¶ 4; [10] Defendant's Response to Plaintiff's Statement of Undisputed Facts ("DRPUF") ¶ 4.

In his complaint, Chapman alleges that he visited the store and encountered an accessible counter and aisles that were "cluttered by merchandise." Complaint ¶¶ 11 & 20. He alleges that this clutter created barriers that prevented him from enjoying full and equal access to the store's facilities, that defendant knew of this state of affairs, that the barriers were not temporary and that Pier 1 refuses to remove the barriers.[11] *Id.* ¶¶ 11–15.

### a. Mootness

Defendant asserts that on January 30, 2012 the accessibility counter was "completely clear, other than when a customer or an employee places merchandise on the counter that a customer wishes to purchase," and that the aisles were "clear of goods," and navigable by wheelchair. Defendant's Motion for Summary Judgment ("DSJ") (Dkt. No. 181) at p. 5.[12] Therefore, defendant argues, Chapman's entire case is "moot." *Id.* Defendant's argument is lacking on the facts and frivolous as a legal matter.

### (1) The Mootness Argument Is Based Entirely Upon Snow's Stricken Declaration.

Defendant's assertion that the accessibility counter was "completely clear" on January 30th is predicated entirely on Paragraphs 5 and 24 of its Statement of Undisputed Facts, which, in turn, are predicated solely and entirely on the Snow Declaration. Since the Snow Declaration has been excluded from use in this summary judgment, this assertion has no factual basis in the record, and will be disregarded.

### (2) The Mootness Argument Fails as a Legal Matter.

For purposes of the legal analysis, the court will assume the accessibility counter was "completely clear" on the one single day defendant asserts it was, January 30, 2012. Defendant argues that plaintiff may not obtain injunctive relief—the only relief available under Title III of the ADA—because the accessibility counter was clear on this one, single day. In support of this remarkable position, defendant cites cases that unsurprisingly, do not support it.

In *Wander v. Kaus*, 304 F.3d 856 (9th Cir.2002), plaintiff sued defendant property owners. Soon after the lawsuit was filed, defendants transferred ownership of the property to new owners, "and no longer had any interest or involvement with the property after that date." *Id.*, 304 F.3d at 858. Because defendants therefore could not possibly provide any relief,

---

10. Defendant supports this fact by the Declaration of Tracey Snow which, as discussed below, is stricken. However, Chapman expressly adopts it as an undisputed fact. PRDUF ¶ 4.

11. The parties engage in some discussion of when the store was built in relation to when the Americans with Disabilities Act was enacted. Those discussions are immaterial because there is no (remaining) claim that any

structural aspect of defendant's store does not comply with the ADA. The only claims are that clutter an other merchandise obstruct the accessibility counter and the aisles.

12. Although defendant does not make it a part of its mootness argument, it also asserts that the aisles and counter were clear on October 28, 2011 and November 9, 2011, when its expert visited the store. *See* Blackseth Declaration, Report (Dkt. No. 184–1).

plaintiff conceded that his claim for injunctive relief against them had become moot. *Id.*, 304 F.3d at 858. The mooting of *Wander* does not justify mooting this case based upon Pier 1's tidying up its accessibility counter on a day of its choosing.[13]

In *Dufresne v. Veneman*, 114 F.3d 952 (9th Cir.1997) (per curiam), plaintiff sued California to put a stop to the spraying of Malathion pesticide to eradicate the Mediterranean Fruitfly. The case was rendered moot on appeal because the state ended the spraying program entirely, having found that the fruitfly had been completely eradicated. The Ninth Circuit found that the cessation of Malathion spraying was *permanent,* and that the possibility of its resumption was "too remote to preserve a live case or controversy." *Id.*, 114 F.3d at 955. Defendant here, in contrast, makes no showing of any kind that the accessibility counter was permanently clear. Nor does defendant even assert that the counter would not return to a cluttered state ever again.[14]

In *Eiden v. Home Depot USA, Inc.*, 2006 WL 1490418 (E.D.Cal.2006) (Karlton, J.), this court dismissed as moot the claims relating to those ADA barriers which had been remedied. *Id.*, at *9–10. In that case, the remedial efforts were by their nature, *permanent:* replaced signage, newly painted "No Parking" signs, new handles on bathroom stall doors, and repositioning of the toilet paper dispenser. *Id.* In contrast, defendants' removal of clutter from a counter is by its nature temporary.

In *Pickern v. Best Western Timber Cove Lodge Marina Resort*, 194 F.Supp.2d 1128

(E.D.Cal.2002) (Shubb, J.), plaintiff conceded "as she must, that defendants' latest remedial efforts have rendered her ADA claim for injunctive relief moot." *Id.*, 194 F.Supp.2d at 1130. Once again, as in the previously discussed cases cited by defendant here, defendant in *Pickern* had made permanent, structural changes to its facility that provided plaintiff with the injunctive relief she sought. That is what made the claims moot, not the temporary removal of a barrier that could easily and quickly return.

■ The legal principle that defendant invokes is "voluntary compliance." However, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Defendant has clearly not met such a burden here. To the contrary, defendant's argument demonstrates one aspect of the recurrence problem that plaintiff himself complains about: that customers place items on the accessible counter and leave them there while shopping.[15] DSJ at p. 5. It hardly demonstrates the unlikelihood of recurrence to affirmatively assert that customers use the accessibility counter as a storage location while they go about their shopping, leaving the wheelchair bound customers either to wait for them to finish shopping, clear the items away if they can, or wait patiently until an

---

**13.** The clear indication in *Wander* is that the transfer out of defendant's control was *permanent,* not done for one day, or for any limited period of time.

**14.** The court could eliminate much of its civil and criminal calendar if it adopted defendant's view that a lawsuit must be dismissed

as moot if defendant can show that it did not violate the law on a single day of its own choosing.

**15.** Whether this conduct renders the counter in violation of the ADA is another matter, which will be discussed below.

employee or other customer comes along who can clear the counter for them.

■ Defendant further asserts that "A request for prospective injunctive relief can be mooted by a defendant's voluntary cessation of challenged activity." DSJ at p. 5. That is, at best, an incomplete statement of what the law is, as made clear by *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (per curiam),[16] one of the cases defendant cites for his mootness argument:

> There is a line of decisions in this Court standing for the proposition that the voluntary cessation of allegedly illegal conduct does *not* deprive the tribunal of power to hear and determine the case, *i.e.,* does *not* make the case moot.

*DeFunis,* 416 U.S. at 318, 94 S.Ct. 1704 (citations and internal quotation marks omitted) (emphasis added). "Voluntary cessation" is relevant *only* if:

> it could be said with assurance that there is no reasonable expectation that the wrong will be repeated. Otherwise, [the] defendant is free to return to his old ways, and this fact would be enough to prevent mootness because of the pub-

lic interest in having the legality of the practices settled.

*Id.* (citations and internal quotation marks omitted).[17] Defendant's remaining mootness cases similarly do not support its argument.[18]

Moreover, Chapman has made a sufficient showing that the clutter is a recurring condition, and that it has not voluntarily ceased. Below is Chapman's recounting of his visits to the store, and the recurrent obstructions he encountered there:

1. February 1, 2011 (Chapman Decl. ¶ 7; Chapman Depo. pp. 29–33):[19] aisles blocked as shown in Exhibit A. accessibility counter cluttered.

2. February 7, 2011 (Chapman Decl. ¶ 8): aisles blocked as shown in Exh. A.

3. February 14, 2011 (Chapman Decl. ¶ 9): aisles blocked as shown in Exh. A. accessibility counter cluttered as shown in Exh. A.

4. March 6, 2011 (Chapman Decl. ¶ 10): aisles blocked as shown in Exh. A.

5. April 29, 2011 (Chapman Decl. ¶ 11): aisles blocked as shown in Exh. A.

---

16. Defendant also cites *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) in support of its mootness argument, but without any explanation. The court does not see any connection between *Geraghty* and this case. *Geraghty* addressed whether a class action became moot upon the expiration of the claim of the named plaintiff.

17. In any event, "voluntary cessation" is not what occurred in *DeFunis:* "mootness in the present case depends not at all upon a 'voluntary cessation' of the admissions practices that were the subject of this litigation. It depends, instead, upon the simple fact that DeFunis is now in the final quarter of the final year of his course of study, and the settled and unchallenged policy of the Law

School is to permit him to complete the term for which he is now enrolled." *DeFunis,* 416 U.S. at 318, 94 S.Ct. 1704.

18. *See San Lazaro Ass'n, Inc. v. Connell,* 286 F.3d 1088 (9th Cir.), *cert. denied,* 537 U.S. 878, 123 S.Ct. 78, 154 L.Ed.2d 133 (2002) (plaintiff's case against California became moot when it voluntarily cancelled its license and thus rendered itself ineligible to receive the benefits sought by the lawsuit); *H.C. ex rel. Gordon v. Koppel,* 203 F.3d 610 (9th Cir. 2000) (action seeking to disqualify a judge was rendered moot when the judge "concluded her temporary assignment").

19. Also, PRDUF ¶¶ 11, 14. Exhibit A (Dkt. No. 187), consists of photographs of the obstructions that, according to Chapman's Declaration, he took himself before leaving the

6. May 2, 2011 (Chapman Decl. ¶ 12): aisles blocked as shown in Exh. A.

7. June 30, 2011 (Chapman Decl. ¶ 13): aisles blocked as shown in Exh. A.

8. October 29, 2011 (Chapman Decl. ¶ 14): aisles blocked as shown in Exh. A.

9. November 23, 2011 (Chapman Decl. ¶ 18): aisles blocked as shown in Exh. A.

10. January 9, 2012 (Chapman Decl. ¶ 19): aisles blocked as shown in Exh. A.

11. February 9, 2012 (Champan Decl. ¶¶ 21–24): aisles blocked. accessibility counter cluttered as shown in Exh. B.

Thus, even though the counters and aisles were eventually cleared for Chapman, his subsequent visits to the store showed that the aisles and occasionally the accessible counter were again obstructed. Chapman's evidence clearly shows that the obstructed aisles and cluttered accessibility counter are a recurrent situation. Defendant asserts that the encountered merchandise was "temporary" or "movable," but does not contest that Chapman encountered them.

Chapman's lawsuit is not moot.

store. Chapman's Deposition is Dkt. No. 202–4.

**20.** The Access Board plays a critical role in implementing the Act:

Congress mandated that the Attorney General's regulations "be consistent with the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board," 42 U.S.C. § 12186(c), commonly referred to as the "Access Board." The Access Board is an independent federal agency.... 29 U.S.C. § 792(a)(1). The Board is directed to establish "minimum guidelines and requirements for the standards issued" under Title III of the ADA, 29 U.S.C. § 792(b)(3)(B), and to "develop advisory information for, and provide appropriate

## b. Temporary and movable nature of the clutter.

### (1) Movable barriers—the law.

■ Defendant claims as a legal matter that "[t]he DOJ's commentary on its regulations, as well as its technical assistance materials echo the point that the ADA does not apply to temporary or movable obstructions." Dkt. No. 181 at p. 6 (ECF 13). In fact, nothing in the DOJ's (Attorney General's) commentaries or its technical assistance materials—nor in the ADA itself, its implementing regulations or the ADA Accessibility Guidelines ("ADAAG"), issued by the Architectural and Transportation Barriers Compliance Board (the "Access Board")[20]—state or imply that "movable obstructions" cannot violate the ADA. To the contrary, the DOJ's commentary on its regulations states just the opposite. In proposing the implementing regulations, the commentary states:

Section 36.211 ... recognizes that it is not sufficient to provide features such as accessible routes ... if those features are not maintained in a manner that enables individuals with disabilities to use them.... "[A]ccessible" routes that are obstructed by furniture, filing cabinets, or potted plants are neither "accessible to" nor "usable by" individuals with disabilities.

56 Fed.Reg. 7,452, 7,464 (February 22, 1991) (Notice of Proposed Rule-making).[21]

technical assistance to, individuals or entities with rights or duties under regulations prescribed" under Title III, 29 U.S.C. § 792(b)(2). In sum, the Board establishes "minimum guidelines" for Title III, but the DOJ promulgates its own regulations, which must be consistent with-but not necessarily identical to-the Board's guidelines. *Miller v. California Speedway Corp.*, 536 F.3d 1020, 1024–25 (9th Cir.2008), *cert. denied*, 555 U.S. 1208, 129 S.Ct. 1349, 173 L.Ed.2d 648 (2009).

**21.** The U.S. Attorney General is the principal regulator that implements the Act. *Miller*, 536 F.3d at 1024 ("The ADA directs the Attorney General to 'issue regulations ... that include standards applicable to facilities' covered by Title III").

From the very beginning, then, the Attorney General recognized that it was not sufficient to have facilities that are accessible in name only. They must be *maintained* in a condition that allows a disabled person to actually use them. In promulgating the final implementing regulations, the Attorney General again expressed those concerns:

> The requirement to remove architectural barriers includes the removal of physical barriers of any kind. For example, § 36.304 requires the removal, when readily achievable, of barriers caused by the location of temporary or movable structures, such as furniture, equipment, and display racks.

56 Fed.Reg. 35,544, 35,568 (July 26, 1991) (Final Rule).

■ Defendant makes much of its assertion that plaintiff could have removed the obstructing merchandise on the accessible counter himself, but that he chose not to. PRDUF ¶¶ 12–13 (Dkt. No. 186–2). Plaintiff asserts that this is irrelevant, since it is defendant's obligation to make its store accessible, not the disabled plaintiff's. *Id.* Plaintiff is correct, as the DOJ's commentaries—and the ADA itself—refer to an obligation that defendant bears.[22] It is not the responsibility of disabled, wheelchair-bound customers like Chapman to move furniture, equipment and display racks so that they can use defendant's facility, even if those things are "temporary and movable."

Even if defendant's assertion were relevant, defendant grossly mis-characterizes Chapman's testimony in this regard. Defendant is correct that Chapman's own testimony shows that it was possible for a store employee to move the items, and that the items were not physically too heavy for Chapman to move. But the testimony clearly explains, a few lines later in the transcript, that Chapman did not move them because he feared that doing so, from his wheelchair, could cause them to fall on the floor. *See* Chapman Deposition (Dkt. 202–4) at p. 32–33 ("As I recall, the counter was full. If I were to put my items on the counter, those items had a great possibility of falling to the floor, ma'am"). If Pier 1 means to argue that it is in compliance with the ADA by forcing wheelchair-bound patrons to clear the accessibility counter themselves, at the risk of having the cluttering material fall to the floor—or on top of themselves—the court rejects the argument.

■ Apart from claiming that the ADA requires disabled customers to move barriers out of the way in order to shop at its store, Pier 1 claims that disabled customers can rely upon store clerks to clear the accessibility counter. Among the ADA's purposes however, is to *eliminate* the stereotype of the helpless disabled person completely reliant on the assistance of able-bodied persons to come to their rescue, not to reinforce it.[23] The disabled community fought for, and earned, the right to have stores remove barriers so that disabled customers could use those facilities independently. This court will not reduce Chapman to the need to beg for assistance or to rely upon the hoped-for existence of a kindly store clerk who happens to be in a mood to be helpful. Defendant's obligation is to ensure that the accessibility counter and the aisles are clear. When it fails to do so, it is in violation of

22. The cited regulation states that "[a] *public accommodation* shall remove architectural barriers ... [including] rearranging ... furniture." 28 C.F.R. § 36.304(a) & (b)(4). It does not state that disabled persons in wheelchairs shall remove those barriers.

23. *See, e.g.,* 42 U.S.C. § 12101(a)(5) ("individuals with disabilities continually encounter various forms of discrimination including ... overprotective rules and policies").

the ADA. It may not rely upon assertions that its store clerks are kind and helpful and would eventually clear the barriers that should not be there in the first place.

### (2) Temporary barriers—the law.

Defendant also argues that the barriers were only "temporary." It is true that the ADA does not create liability for "isolated or temporary" interruptions in the availability of accessible features. 28 C.F.R. § 36.211(b). However, defendant's interpretation of what barriers are "temporary" is not correct. "Temporary" is not meant to exclude only objects like the Statue of Liberty—deliberately placed there, immovable and intended to stay there forever.

■ "Temporary," as used in this context, is closer to "transitory," that is, an object that is unavoidably placed in the aisle, but with the intention of removing it as soon as possible.[24] In 1993, pursuant to Title III's directive, the Attorney General offered further guidance and clarification on temporary and "isolated" obstructions in its Technical Assistance Manual ("TAM").[25]

> Where a public accommodation must provide an accessible route, the route must remain accessible and not blocked by obstacles such as furniture, filing cabinets, or potted plants....[¶] BUT: An isolated instance of placement of an object on an accessible route would not be a violation, if the object is promptly removed.

TAM III–3.7000 (*www.ada.gov/taman3. html*, last viewed by the court on June 22, 2012). The TAM thus recognizes that "isolated or temporary interruptions in access" can be excused even if an object is placed "on an accessible route." But the action is excusable only "if the object is promptly removed." This belies defendant's claim that the object can remain there indefinitely, so long as no disabled person comes by and asks to have it removed. Rather, the route must *remain* accessible and not blocked.[26] It demands that the store maintain itself in such a way that the disabled customer can use its facilities independently.

The "temporary" blockages that occur when a store is being restocked or items are being moved from one office to another is not prohibited by the ADA. In 2008, the Attorney General clarified this in his commentary to the proposed rules:

> The Department has noticed that some covered entities do not understand what is required by § 36.211.... A common problem observed by the Department is that covered facilities do not maintain accessible routes. For example, the accessible routes in offices or stores are commonly obstructed by boxes, potted plants, display racks, or other items so that the routes are inaccessible to people who use wheelchairs. Under the ADA, the accessible route must be maintained and, therefore, these items are required to be removed. If the items are placed

---

**24.** "Temporary" can even refer to objects inadvertently blocking access on an isolated occasion, as this court discussed in the previous cross-motions. *See Chapman*, 2006 WL 1686511 at \*9–10.

**25.** "[P]ursuant to Title III's directive to provide technical assistance to covered entities, the DOJ published a Technical Assistance Manual ('TAM')." *Miller*, 536 F.3d at 1026, *citing* 42 U.S.C. § 12206(a), (c)(2)(c).

**26.** Maintaining accessible routes would prevent exactly the humiliation that Chapman claims he experienced, according to his Declaration, when the Vacaville store essentially assigned an employee to follow him around clearing obstructions out of his way. *See* Chapman Declaration (Dkt. No. 187) ¶¶ 15–22. As noted, the ADA is not meant to encourage stores to treat the disabled like helpless children who must be hovered over at every moment.

there temporarily—for example, if an office receives multiple boxes of supplies and is moving them from the hall to the storage room—then § 36.211(b) excuses such "isolated or temporary interruptions."

73 Fed.Reg. 34,508, 34,523 (June 17, 2008) (Notice of Proposed Rule-making). The Attorney General reiterated this position again in 2010 in explaining why it was declining to make a requested change to Section 36.211 of the implementing regulations:

> It is the Department's position that a temporary interruption that blocks an accessible route, such as restocking of shelves, is already permitted by existing § 36.211(b), which clarifies that "isolated or temporary interruptions in service or access due to maintenance or repairs" are permitted.

75 Fed.Reg. 56,236, 56,270 (September 15, 2010) (Commentary to Final Rule).[27]

Thus the Attorney General has made very clear what is meant by "temporary." It is, as noted above, more akin to "transitory," in that it refers to, for example, boxes temporarily placed in an accessible route *while being moved* from, say, "the hall to the storage room." Such barriers are "temporary," because they are intended to be cleared as soon as the barrier is created. They are not intended to be placed there—and to stay there—until a disabled customer finds that they are making it impossible to use the facility. In other words, the barrier is not "temporary" if its placement *requires a disabled* person to interrupt his use of the facility, wander around the facility trying to find a store employee capable of moving the obstruction, and then request that the barrier be removed.

### (3) Temporary barriers—the facts.

Whether the barriers that Chapman encountered were "isolated or temporary" is a question of fact. Defendant's evidence here is an expert report prepared by Kim R. Blackseth (Dkt. No. 184). Plaintiff does not challenge the expert nor the report. Blackseth states: "The aisles throughout the store were the required minimum 36 [inches] wide and clear of goods.[28] On my site visits, I was able to navigate the aisles in my electric Invacare wheelchair." In addition, defendant cites Chapman's own deposition testimony for the proposition that Chapman was able to navigate the aisles.

On this basis, it appears that defendant has met its burden of production on summary judgment. The question is whether Chapman can establish a genuine issue as to this material fact. He easily does so.

First, Chapman relies on his own expert, Joe Card. Card's Declaration (Dkt. No. 189), states that he conducted an "inspection" of the store on two separate occasions, May 13, 2005 and November 3, 2011. On both occasions, Card encountered aisles that were blocked by merchandise or reduced in width below 36 inches. Photographs attached to the 2011 report show blocked aisles, as well as a cluttered counter. (Dkt. No. 183-2). Also, Chapman's deposition testimony is that "there were times that I could not reach or get to certain items, height or not, due to the aisles being blocked, ma'am" (at 52).

Second, Chapman's declaration, recounted above, provides sufficient admissible evidence, including photographs of blocked aisles and a cluttered accessibility counter, to create a triable issue of fact on whether

---

**27.** A commentator had requested that the Rule be amended to expressly permit restocking of shelves.

**28.** "The minimum clear width of an accessible route shall be 36 [inches]." ADAAG 4.3.3, 56 Fed.Reg. 45,584, 45,659 (September 6, 1991, Dept. of Transportation).

he encountered barriers in the store and whether they were "isolated or temporary." Accordingly, plaintiff has met his burden to show that there is a genuine issue as to whether the accessibility counter and aisles were obstructed, and whether the obstruction was "isolated or temporary."

### C. State Claims

#### 1. Disabled Persons Act and the Unruh Act

 Defendant seeks summary judgment on plaintiff's claims under the California Disabled Persons Act and under the Unruh Act because plaintiff "cannot establish any violation of applicable federal or state accessibility standards." As discussed above, there is a genuine dispute about this, and accordingly defendant's motion for summary judgment on these state claims will be denied.

#### 2. Health & Safety Code.

 Defendant seeks summary judgment on plaintiff's claim under the California Health & Safety Code and the Gov't Code because plaintiff "cannot establish any violation of state accessibility standards." Defendant notes that plaintiff has made no defense of this claim in his opposition and does not seek summary judgment on the claim in his cross-motion, and argues that it is therefore "abandoned." Dkt. No. 193 at p. 15 (ECF 19). Defendant's cited Ninth Circuit authority, *Novato Fire Protection Dist. v. U.S.*, 181 F.3d 1135 (9th Cir.1999) *cert. denied*, 529 U.S. 1129, 120 S.Ct. 2005, 146 L.Ed.2d 955 (2000) does not support this proposition. It holds only that issues not raised before the district court are waived on appeal.

On the merits, defendant failed to meet its initial burden on summary judgment

with respect to this claim, since it argues solely that the obstructions plaintiff encountered were "temporary." As discussed above, defendant's argument is based upon its incorrect view of what obstructions are "temporary." Accordingly, defendant's motion for summary judgment is denied as to this claim, notwithstanding plaintiff's unexplained silence.

### IV. ANALYSIS–PLAINTIFF'S CROSS—MOTION FOR SUMMARY JUDGMENT

Plaintiff cross-moves for summary judgment. It is plaintiff's initial burden to show that there are no material facts genuinely in dispute, and that he is entitled to judgment as a matter of law.

 Plaintiff's evidence, as discussed above, makes a sufficient showing that on numerous occasions, he encountered barriers that interfered with his ability to use and enjoy the facilities on an equal footing with non-disabled customers. He encountered aisles that were blocked with merchandise, and he encountered accessibility counters that were cluttered with merchandise, as follows:

1. February 1, 2011 (Chapman Decl. ¶ 7; Chapman Depo. pp. 29–33) (Vacaville store):[29] aisles blocked as shown in Exhibit A. accessibility counter cluttered.

2. February 7, 2011 (Chapman Decl. ¶ 8) (Vacaville store): aisles blocked as shown in Exh. A.

3. February 14, 2011 (Chapman Decl. ¶ 9) (Vacaville store): aisles blocked as shown in Exh. A. accessibility counter cluttered as shown in Exh. A.

---

**29.** Also, PRDUF ¶¶ 11, 14. Exhibit A (Dkt. No. 187), consists of photographs of the obstructions that, according to Chapman's Declaration, he took himself before leaving the

4. March 6, 2011 (Chapman Decl. ¶ 10) (Vacaville store): aisles blocked as shown in Exh. A.

5. April 29, 2011 (Chapman Decl. ¶ 11) (Vacaville store): aisles blocked as shown in Exh. A.

6. May 2, 2011 (Chapman Decl. ¶ 12): (Vacaville store): aisles blocked as shown in Exh. A.

7. June 30, 2011 (Chapman Decl. ¶ 13) (Vacaville store): aisles blocked as shown in Exh. A.

8. October 29, 2011 (Chapman Decl. ¶ 14) (Vacaville store): aisles blocked as shown in Exh. A.

9. November 2, 2011 (Chapman Decl. ¶ 31):[30] aisles blocked as shown in Exh. B.

10. November 3, 2011 (Chapman Decl. ¶ 32):[31] aisles blocked as shown in Exh. B.

11. November 4, 2011 (Chapman Decl. ¶ 33):[32] aisles blocked as shown in Exh. B.

12. November 4, 2011 (Chapman Decl. ¶ 34):[33] aisles blocked as shown in Exh. B.

13. November 9, 2011 (Chapman Decl. ¶ 35):[34] aisles blocked as shown in Exh. B.

14. November 9, 2011 (Chapman Decl. ¶ 36):[35] aisles blocked as shown in Exh. B.

15. November 9, 2011 (Chapman Decl. ¶ 37):[36] aisles blocked as shown in Exh. B.

16. November 22, 2011 (Chapman Decl. ¶ 38):[37] aisles blocked as shown in Exh. B.

17. November 22, 2011 (Chapman Decl. ¶ 39):[38] aisles blocked as shown in Exh. B.

18. November 22, 2011 (Chapman Decl. ¶ 40):[39] aisles blocked as shown in Exh. B.

19. November 23, 2011 (Chapman Decl. ¶ 18) (Vacaville Store):[40] aisles blocked as shown in Exh. A. accessibility counter cluttered.

store. Chapman's Deposition is Dkt. No. 202–4.

30. This paragraph refers to the Pier 1 store located at 6245 Sunrise Boulevard, Sacramento, California. Plaintiff asserts that he offers evidence of other stores solely to impeach Pier 1's claim that the blockages he encountered at Vacaville were an isolated phenomenon. Defendant has not objected to the evidence regarding these other stores.

31. This paragraph refers to the Pier 1 store located at 1101 Galleria Boulevard, Roseville, California.

32. This paragraph refers to the Pier 1 store located at 6245 Sunrise Boulevard, Sacramento, California.

33. This paragraph refers to the Pier 1 store located at 3641 North Freeway Boulevard, Sacramento, California.

34. This paragraph refers to the Pier 1 store located at 6245 Sunrise Boulevard, Sacramento, California.

35. This paragraph refers to the Pier 1 store located at 1101 Galleria Boulevard, Roseville, California.

36. This paragraph refers to the Pier 1 store located at 3641 North Freeway Boulevard, Sacramento, California.

37. This paragraph refers to the Pier 1 store located at 6245 Sunrise Boulevard, Sacramento, California.

38. This paragraph refers to the Pier 1 store located at 1101 Galleria Boulevard, Roseville, California.

39. This paragraph refers to the Pier 1 store located at 3641 North Freeway Boulevard, Sacramento, California.

40. Also, PRDUF ¶ 15, 17–19.

20. January 9, 2012 (Chapman Decl. ¶ 19) (Vacaville store): aisles blocked as shown in Exh. A.

21. January 27, 2012 (Chapman Decl. ¶ 41):[41] aisles blocked as shown in Exh. B. accessibility counter cluttered with a large Easter Basket.

22. February 9, 2012 (Champan Decl. ¶¶ 21–24) (Vacaville store): aisles blocked. accessibility counter cluttered as shown in Exh. B.

Plaintiff has thus met his burden of establishing that Pier 1 failed to maintain its stores in a manner that complied with the ADA and its implementing regulations. Unless defendant can show that there is a genuine issue of material fact here, plaintiff will be entitled to a judgment on his ADA claims. Defendant offers four arguments to meet this burden, none of which raises a genuine issue of material fact, or otherwise rebut plaintiff's factual or legal showing.

### A. ADA Claim.

#### 1. The Aisles and Counters Were Clear When Defendant's Expert Visited.

Defendant offers the Declaration and Expert report of Kim R. Blackseth (Dkt. No. 184), as evidence that "the sales counter is currently clear and has been clear in the past."

Blackseth's Declaration asserts that on his visits to Pier 1, she "frequently" observed compliant aisles, and "frequently had no problem navigating the aisles in my wheelchair." Blackseth Decl. ¶ 12. On its own, this Declaration, by stating what "frequently" happened, seems to be saying that on other—perhaps less frequent—occasions, the aisles were blocked, and that

navigation was not a simple matter. In any event, the Declaration does not create a genuine dispute.

Blackseth's report (Dkt. No. 184–1), asserts that on October 28, 2011 and November 9, 2011, he visited the Vacaville store and found that, on those days, the accessible counter was clear of goods and the aisles were clear. *Id.* The report was supported by photographs showing a clear accessibility counter, and three (3) clear aisles.[42] This report, however, does not contradict plaintiff's sworn declaration and deposition testimony that this same store had a cluttered accessibility counter and/or blocked aisles on the days that he visited it—February 1, 7 and 14, 2011, March 6, 2011, April 29, 2011, May 2, 2011, June 30, 2011, October 2011, November 23, 2011, January 9, 2012 and February 9, 2012. Neither the ADA nor its implementing regulations is concerned with keeping a store accessible on the two days out of the year that it is visited by its expert witness. It is concerned with keeping the facility accessible for the store's disabled customers, whenever they might visit.

Defendant's first argument does not raise a genuine issue as to any material fact, nor does it rebut plaintiff's entitlement to summary judgment.

#### 2. The Accessibility Counter Was Clear in 2004.

Defendant, in its Reply, asserts that plaintiff did not complain of a cluttered accessibility counter in 2004, and that he improperly complains of it now. It apparently refers to the following statement by plaintiff:

> Unlike barriers of concrete and steel, Pier 1's mootness defense is based *en-*

---

**41.** This paragraph refers to the Pier 1 store located at 3641 North Freeway Boulevard, Sacramento, California.

**42.** From the photographs themselves, it can be seen that the store has more than three aisles. However, the report contains no photographs of those other aisles.

*tirely* on their promise that the merchandise blocking the aisles and counter, which existed in 2004 and continue to exist in 2012 ... were removed and will not return in the future. Yet, Chapman's photographs taken the day *before* this motion was filed ... clearly shows merchandise blocking the accessible routes.

Dkt. No. 186–1 at p. 8 (emphasis in text). Defendant apparently objects to plaintiffs insertion of the words "and counter" in the above quotation as it relates to 2004. The court does not understand plaintiff to be making a retroactive argument about the accessibility counter, and if he is, the court will not credit it.

However, as to the claims that plaintiff is making—the aisles were blocked from 2004 forward, and the accessibility counter was cluttered during some of his 2011 and 2012 visits—defendant's argument does not create a genuine issue or otherwise rebut plaintiff's entitlement to summary judgment.

### 3. The Obstructions Were "Movable" and not "Permanent."

Defendant argues that no violation of the ADA can occur if a disabled, wheelchair-bound customer can move the obstruction, or if a store employee happens by who can move it. Dkt. No. 193 at p. 8–9. As discussed above, this is an incorrect interpretation of the law. The legal obligation to maintain the store so that it is accessible to its customers rests with Pier 1, not the disabled, wheelchair-bound customers, and not to the off-chance that an employee will happen by who is strong enough to move the obstruction.[43]

Defendant's incorrect legal interpretation cannot defeat plaintiff's entitlement to summary judgment.

### 4. The Cluttered Counters Were Usable.

Defendant relies upon the photographs taken by plaintiff's expert, Joe Card, to assert that plaintiff could use the cluttered counter because there was enough free space available. Even if this were true, however, it does not contradict the other photographs taken by plaintiff that show a cluttered accessibility counter. Nor does it dispute plaintiff's testimony that he could not use the counter—which he encountered on a different day than depicted in the Card Exhibits—until the clutter was moved. In short, plaintiff has provided evidence, including photographs showing cluttered accessible counters, and defendant has not responded to that evidence.[44]

Defendant cites *Kohler v. Flava Enterprises, Inc.*, 826 F.Supp.2d 1221 (S.D.Cal. 2011), in support of its argument that the counter was usable. In *Kohler*, the plaintiff submitted a single photograph that showed only "a few items on the counter, and it does not appear that these items would prevent him from using the lowered counter to purchase merchandise." *Id.*, 826 F.Supp.2d at 1228. Those are not the facts before this court. Here, plaintiff has

---

**43.** Defendant relies heavily upon the stricken Snow Declaration for its assertion that the aisle blockages were movable. Snow repeats over and over again that the obstructions—which she does not deny were present—were "movable merchandise." Even if the Declaration were considered on this motion, it would not help defendant's case since, as discussed above, it is immaterial that a wheelchair-bound customer could move the obstructions out of the way.

**44.** Defendant also relies upon the Snow Declaration, which the court has excluded from consideration here. However, even that Declaration only addresses one single instance where plaintiff asserts that he could not use the accessible counter because of clutter. Even if the Declaration were considered on this motion, it would only put that single event in genuine dispute, but the remaining evidence of unusable counters would be as uncontested as they are now.

submitted declarations and deposition testimony—unrefuted by defendant—that the clutter on the accessibility counter prevented him from using the counter, and that he was able to use the counter only after those items were moved.

Defendant has therefore failed to create a genuine dispute as to the usability of the accessible counter.

### 5. The Clutter Was "Temporary."

Defendant relies on its legal argument that the clutter—as to the counter and the aisles—was "temporary" because a store employee eventually moved the clutter so that plaintiff could navigate the aisle or make his purchase. As discussed above, however, this is not "temporary" as that term applies to the ADA and its implementing regulations. As discussed above, temporary does not mean that the obstructions are placed there, and stay there, until a disabled person complains about them. Temporary means "in transit," in the sense that the obstacles are placed in the aisle while being moved from one place to another.[45]

Defendant relies heavily upon *Dodson v. Dollar Tree Stores, Inc.*, 2006 WL 2084738 *3 (E.D.Cal.2006) (England, J.), for the proposition that merchandise in the aisles are "temporary" and do not violate the ADA.[46] However *Dodson* does not stand

for this proposition. In *Dodson,* the court credited trial testimony that "the only impediments" in the aisles "were related to ongoing merchandise stocking."[47] Accordingly, *Dodson* stands for the proposition that this court has already set forth above, that "temporary" obstructions are those that are "in transit," not those that are sitting there waiting for a disabled person to encounter them.

Defendant has failed to create a genuine issue on the "temporary" status of the aisle blockages or the disability counter clutter.

### B. STATE CLAIMS

Plaintiff's claims under the Disabled Persons Act and the Unruh Act are established if a violation of the ADA is established. Accordingly, a summary judgment for plaintiff on his ADA claim requires a summary judgment on these state claims as well.

### V. CONCLUSION

Defendant, on its summary judgment motion, relied upon failed arguments that obstructions in its store did not violate the ADA because they were eventually moved after plaintiff encountered them, and because plaintiff himself could have moved them (notwithstanding the risks to his

---

**45.** The court does not rule that "in transit" or "transitory" is the only concept that can encompass the definition of "temporary." It is however, the one concept that appears consistently in the Attorney General's commentary. The court certainly would have considered other definitions if defendant had offered them. However, the court rejects defendant's implicit definition—that obstacles that block the store aisle or prevent use of the accessibility counter are "temporary" so long as they are moved *after* the disabled person encounters them.

**46.** The remainder of defendant's cases along these lines are discussed above in the Mootness section.

**47.** That *Dodson* testimony came from Kim Blackseth, defendant's expert here. However, in this case, Blackseth does not assert in his expert report, nor in his declaration, that the obstructions were related to ongoing merchandise stocking. To the contrary, he offers no explanation for the obstructions, because he did not observe any during his visits. Even the Snow Declaration, which the court is not considering in any event, did not ascribe the aisle blockages to merchandise stocking. Rather, Snow focused on her assertion that the obstructions were "movable."

well-being and dignity). It also relied upon failed factual assertions that its aisles and accessibility counter were not obstructed on dates when its expert witness visited, or the one day its store manager saw Chapman in the store.

On plaintiff's summary judgment motion, he established, without dispute, that on numerous occasions, Pier 1's aisles were blocked and that its accessibility counter was cluttered. He established that he was prevented from using these facilities until the obstructions were eventually cleared away.

For the reasons set forth above:

1. The Snow Declaration is **EXCLUDED** from consideration on this motion;

2. Defendant's motion to preclude plaintiff's cross-motion as untimely, is **DENIED**;

3. Defendant's motion to strike portions of the Chapman Declaration is **DENIED**;

4. Defendant's motion for summary judgment is **DENIED** in its entirety;

5. Plaintiff's cross-motion for summary judgment is **GRANTED** as to the ADA claim, the Disabled Persons Act claim and the Unruh Act claim.[48]

6. Plaintiff shall submit a Proposed Judgment of Permanent Injunction no later than fourteen (14) days from the date of this order, and defendant shall file its response, if any, no later than seven (7) days from plaintiff's filing.

7. The Pretrial Conference date of September 4, 2012 at 1:30 p.m. is hereby **CONFIRMED.** The court notes that the remaining issues in the case are plaintiff's demand for damages under his state

claims, and the unresolved Health & Safety Code and Gov't Code claim.

IT IS SO ORDERED.

---

48. As best the court can tell, plaintiff has not sought summary judgment on his Health & Safety Code and Gov't Code claim. To the degree plaintiff seeks summary judgment on this claim, it is **DENIED.**