Filed 2/6/14  Treter v. Plaza Bonita CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| JOSEPH TRETER,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>PLAZA BONITA, L.P.,<br><br>      Defendant and Respondent. | D062732<br><br><br><br>(Super. Ct. No.<br> 37-2011-00074753-CU-CR-SC) |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Reversed.

Mataele Law Offices, Isileli Topou Manaia Mataele for Plaintiff and Appellant.

Katten Muchin Rosenman, LLP, Holly Michele Parker and Stacey Knight for Defendants and Respondents.

I.

INTRODUCTION

Plaintiff Joseph Treter appeals from a judgment entered in favor of defendant Plaza Bonita, L.P. (Plaza Bonita).[1] Treter, who is disabled, was an employee of a retail store in a mall owned and operated by Plaza Bonita. Treter brought an action against Plaza Bonita alleging that Plaza Bonita violated the Unruh Civil Rights Act (Unruh Act) (Civ. Code, § 51 et seq.) by denying him access to full and equal accommodations at the mall, in multiple ways. For example, Treter alleged that the mall had forced him to park in a distant employee lot during the busy holiday season as a result of its employee holiday parking policy. Treter also alleged that the mall contained a variety of access barriers, including an insufficient number of handicapped-accessible parking spaces, handicapped-accessible spaces that did not have proper corresponding access aisles, and access aisles that were directed to routes without curb cuts or ramps. Treter further alleged that the mall's policy of locking its automated sliding doors when the mall closed for the day constituted a barrier to his access. Plaza Bonita moved for summary judgment. The trial court determined that Plaza Bonita was entitled to judgment as a matter of law.

On appeal, Treter challenges the trial court's determination, as well as some of the evidentiary rulings on which the court's summary judgment ruling was based. We

---

[1]     Plaza Bonita was erroneously sued as Westfield America, Inc. The parties do not dispute that Plaza Bonita is the correct defendant. Judgment was entered with respect to Plaza Bonita.

2

conclude that with respect to Treter's allegations that Plaza Bonita violated the Unruh Act by failing to make the mall accessible because its parking lot did not comply with the requirements of the Act, Plaza Bonita is not entitled to judgment as a matter of law. Plaza Bonita presented no evidence as to the state of its parking lot, or specifically, its handicapped-accessible parking spaces, during the time period covered by Treter's complaint. Rather, the evidence that Plaza Bonita submitted described the state of the mall's parking lots approximately two years *after* the time that Treter alleges he suffered discrimination. There thus remains a triable issue of fact as to whether the parking lots suffered from the defects that Treter alleges in his complaint during the relevant time period. However, as to Treter's other factual theories for recovery under the Unruh Act, Plaza Bonita has established that there are no triable issues of material fact as to those theories, and that Treter cannot prevail on any of those factual theories, as a matter of law.

Because there remain factual issues in dispute with respect to one of Treter's theories for recovery pursuant to his single cause of action alleging violations of the Unruh Act, Plaza Bonita is not entitled to summary judgment. For this reason, we reverse the judgment of the trial court.

II.

FACTUAL AND PROCEDURAL BACKGROUND

From October 2009 until March 2010, Treter worked as a store manager at Magic Bug, a retail store located in defendant Plaza Bonita's Westfield Plaza Bonita Mall (the

3

Mall).  Treter alleges, and the Mall appears to concede, that Treter is a " 'person with physical disabilities' as defined by all applicable California and United States laws."

On December 2, 2009, Treter went to the Mall and attempted to park in a parking lot closest to his store.  Treter elected to park in a non-handicapped accessible space in the parking lot even though a handicapped-accessible space was available at the time.  A security guard for the Mall asked Treter whether he was a Mall employee.  When Treter said that he was, the security guard told Treter that he would "have to park in the handicap [space]—or . . . park in the employee parking lot."  Treter moved his car to a handicapped-accessible parking space without further problem.

Treter's father called the Mall's administrative office to clarify the holiday parking policy as it applied to disabled employees.  The trial court excluded as hearsay what a Mall employee allegedly told Treter's father about the Mall's policy regarding disabled employee holiday parking.

According to Treter's declaration and his deposition testimony, after December 2, 2009, on days when there was no handicapped-accessible parking space available, he would "park in the employee parking lot" in order to not "get ticketed or towed."  This occurred between 10 and 15 times during the holiday season that year.

On January 14, 2011, Treter filed a complaint against Plaza Bonita.[2]  In his complaint, Treter alleged a single cause of action for "Denial of Access to Full and Equal Accommodations, Advantages, Facilities, Privileges and/or Services in Violation of

---

[2]     Again, Treter originally erroneously sued Westfield America, Inc.  Treter was represented by counsel in the trial court.

4

California Civil Code § 51 et seq. (the Unruh Civil Rights Act)."  In this cause of action, Treter alleged a number of independent acts or omissions that could support his claim that the defendant violated the Unruh Act.  Specifically, Treter alleged (1) that the Mall had forced him to park in the employee lot; (2) that the Mall contained a variety of access barriers, including having an insufficient number of handicapped-accessible parking spaces, having handicapped-accessible spaces that did not have corresponding access aisles, and having access aisles that were directed to routes without curb cuts or ramps; and (3) that he was denied full and equal accommodations because he suffered "hardships" due to the Mall's policy of locking its automated sliding doors upon the closing of the Mall at night.

Plaza Bonita filed a motion for summary judgment in response to Treter's complaint.  In support of its motion, Plaza Bonita submitted the declaration of Sherry Jones, general manager of the Mall, and the declaration of Karen Haney, an expert on compliance with the Americans with Disabilities Act (ADA).

Jones's declaration identified the Mall's employee holiday parking policy, which specifically exempts handicapped employees from its terms.  Jones also verified that for safety reasons the Mall's policy was to lock all automatic doors while the Mall was closed.  However, manual doors remained unlocked from the inside, allowing patrons and employees to safely exit the Mall after closing.

In her declaration, Haney attested that none of the architectural barriers identified in Treter's complaint actually existed at the Mall at the time she surveyed the property.  For example, Haney explained that all of the handicapped-accessible spaces contained

5

access aisles, that the access aisles lead to accessible entrances to the mall, and that wherever these accessible routes cross a curb, there is a "curb ramp or flush transition." Haney also concluded that the manual doors located adjacent to the automatic doors were compliant with ADA design standards.

Treter opposed Plaza Bonita's motion for summary judgment, arguing that there were triable issues of fact regarding: (1) whether the exemption to the employee parking policy applied to him; (2) whether the access aisles at the Mall comply with ADA design standards; and (3) whether the manual doors at the Mall's entrance/exits complied with ADA design standards.[3]

In support of his opposition to Plaza Bonita's summary judgment motion, Treter attempted to submit evidence in the form of an expert's "report" regarding accessibility at the Mall. This "report" was attached as an exhibit to a declaration submitted by Treter's attorney. Plaza Bonita objected to much of the evidence that Treter offered.

The trial court sustained a number of Plaza Bonita's evidentiary objections and ultimately granted its motion for summary judgment in full. The court concluded that the Mall had a written holiday employee parking policy that exempted employees with disabilities from its coverage, and that even if the court were to consider the excluded statement of the security guard who, Treter alleged, had said something different, this would not place in dispute whether the Mall employee holiday parking policy was discriminatory. The court also concluded that the Mall's policy of locking the automated

---

[3]     These are the only grounds that Treter raised in his opposition to Plaza Bonita's motion for summary judgment.

6

doors at closing did not violate the ADA because the adjacent manual doors provided a reasonable alternative point of exit from the Mall. Finally, the court concluded that the Mall's expert's declaration and supporting exhibits established that the access aisle problems identified in Treter's complaint did not exist.

The trial court entered judgment in favor of Plaza Bonita. Treter filed a timely notice of appeal.

III.

DISCUSSION

A.      *Legal standards*

1.      *Summary judgment*

A moving party is entitled to summary judgment when the party establishes that it is entitled to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); see also *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 [" 'A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' [Citation.]"]) A defendant may make this showing by establishing that the plaintiff cannot establish one or more elements of all of his causes of action, or that the defendant has a complete defense to each cause of action. (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466.)

In reviewing a trial court's ruling on a motion for summary judgment, the reviewing court makes " 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to

7

judgment as a matter of law.  [Citations.]' "  (*Trop v. Sony Pictures Entertainment, Inc.*

(2005) 129 Cal.App.4th 1133, 1143.)

The issues on a motion for summary judgment are framed by the pleadings.

(*Sweat v. Hollister* (1995) 37 Cal.App.4th 603, 607.)

2.      *State Disability Access Remedies*

"The Unruh Civil Rights Act broadly outlaws arbitrary discrimination in public

accommodations and includes disability as one among many prohibited bases.  ([Civ.

Code,] § 51, subd. (b).)[4]  As part of the 1992 reformation of California's state disability

law, the Legislature amended the Unruh Civil Rights Act to incorporate by reference the

ADA [(42 U.S.C. § 12101 et seq.)], making violations of the ADA per se violations of

the Unruh Civil Rights Act. ([Civ. Code,] § 51, subd. (f); *Munson v. Del Taco, Inc.*

[(2009)] 46 Cal.4th [661,] 668-669 [(*Munson*)].)  This amendment was intended to

extend to disabled individuals aggrieved by an ADA violation the full panoply of Unruh

Civil Rights Act remedies.  (*Munson*[, *supra*,] at p. 673.)  These include injunctive relief,

actual damages (and in some cases as much as treble damages), and a minimum statutory

award of $4,000 per violation.  ([Civ. Code,] § 52, subds. (a), (c)(3); *Turner v.*

---

4      Civil Code section 51 provides, in pertinent part:

> "(a) This section shall be known, and may be cited, as the Unruh
> Civil Rights Act.  [¶]  (b) All persons within the jurisdiction of this
> state are free and equal, and no matter what their sex, race, color,
> religion, ancestry, national origin, disability, medical condition,
> marital status, or sexual orientation are entitled to the full and equal
> accommodations, advantages, facilities, privileges, or services in all
> business establishments of every kind whatsoever."

8

*Association of American Medical Colleges* (2011) 193 Cal.App.4th 1047, 1058.)"
(*Jankey v. Lee* (2012) 55 Cal.4th 1038, 1044 (*Jankey*).)

"The ADA prohibits discrimination on the basis of disability in the enjoyment of public accommodations, including with respect to access." (*Jankey, supra*, 55 Cal.4th at p. 1044.) The ADA provides in pertinent part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who . . . operates a place of public accommodation." (42 U.S.C. § 12182(a).) The ADA defines discrimination as "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." (42 U.S.C. § 12182(b)(2)(A)(ii).)

Thus, "[b]usinesses must ' "remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." ' [Citation.] Liability does not depend on proof of intentional discrimination, but a private litigant cannot obtain damages for the denial of access, only injunctive relief[, under the ADA]." (*Jankey, supra*, 55 Cal.4th at p. 1044.)

In order to prevail on a discrimination claim under Title III of the ADA, a plaintiff "must show that (1) [he/]she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public

9

accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of [his/]her disability." (*Molski v. M.J. Cable, Inc*. (9th Cir., 2007) 481 F.3d 724, 730.)

For buildings and facilities that were altered or constructed after January 26, 1993, "discrimination" includes the failure to design and construct facilities or the failure to make alterations to the facility that render it "readily accessible to and usable by individuals with disabilities." (42 U.S.C. § 12183(a)(1).) "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines." (*Chapman v. Pier 1 Imports (U.S.) Inc*. (9th Cir. 2011) 631 F.3d 939, 945 (*Chapman*).) The ADA Accessibility Guidelines (ADAAG) are developed by the Architectural and Transportation Barriers Compliance Board (the Access Board), a federal agency composed of 13 members of the public appointed by the President and the heads of 12 federal agencies. (*Rush v. Hyun Suk Kim* (C.D.Cal., 2012) 908 F.Supp.2d 1117, 1119 (*Rush*); see also 29 U.S.C. § 792(a)(1).) The Department of Justice is "required to promulgate regulations consistent with the Access Board's guidelines, although the regulations need not be identical to the guidelines." (*Rush*, *supra*, at p. 1119.)[5]

---

[5] The architectural regulations or "design standards" implemented by the federal ADA are often referred to in the literature as "ADAAG" which is an acronym for "ADA Accessibility Guidelines." (See *Independent Living Resources v. Oregon Arena Corp.* (D.Oregon 1997) 982 F. Supp. 698, 707–708 ["The guidelines issued by the Access Board are denominated the 'ADA Accessibility Guidelines' ('ADAAG')"]; *Access Now, Inc. v. Ambulatory Surgery Center Group, Ltd.* (S.D.Fla. 2001) 146 F.Supp.2d 1334, 1336 ["These guidelines are called . . . ('ADAAG')"].) The ADAAG are found in appendix A to part 36 of title 28 of the Code of Federal Regulations.

"A disabled person who encounters a "barrier," i.e., an architectural feature that fails to comply with an ADAAG standard relating to his disability, suffers unlawful discrimination as defined by the ADA. [Citation.] Indeed, by 'establish[ing] a national standard for minimum levels of accessibility in all new facilities,' [citation], the ADAAG removes the risk of vexatious litigation that a more subjective test would create. Those responsible for new construction are on notice that if they comply with the ADAAG's objectively measurable requirements, they will be free from suit by a person who has a particular disability related to that requirement." (*Chapman*, *supra*, 631 F.3d at p. 947, fn. 5.)

B.      *The trial court did not err in concluding that Treter could not establish his claim for a violation of the Unruh Act based on the holiday employee parking policy*

Treter alleges that on a single occasion in December 2009, he attempted to park in the Mall's regular parking lot during a time period in which the Mall's employee holiday parking policy was in effect. According to the complaint, a parking enforcement employee for the Mall told Treter that he had to either park in a handicapped-accessible parking space or in one of the employee parking lots, which were much farther from the Mall's entrances. Treter goes on to allege that on subsequent days during the month of December in 2009, he parked in the employee parking lot because, he claims, he was "forced" to do so.

In support of its motion for summary judgment, Plaza Bonita submitted a copy of its written employee holiday parking policy, which provides in relevant part: "Employees who are disabled and have place cards issued through the California Department of

11

Motor Vehicles are exempt from the employee parking policy." Treter admitted that he received a copy of this written policy before the alleged December 2, 2009 incident. By its terms, the Mall's employee holiday parking policy did not require disabled employees to park in the far employee lots. Rather, it permitted disabled employees, including Treter, to park anywhere that they could have parked under the employee parking policy in effect during non-holiday times. Plaza Bonita therefore presented evidence establishing that the employee holiday parking policy was not discriminatory on its face. This evidence also contradicts Treter's allegation in his complaint that he was "forced" to park in the employee parking lot during December 2009.

In response, Treter contends that a parking enforcement employee for the Mall, as well as a Mall employee named "Renee," made statements to the effect that Treter would be required to park in the employee parking lot. Indeed, in an attempt to address the evidence that Plaza Bonita submitted in support of its motion for summary judgment regarding the employee holiday parking policy, Treter presented evidence, in the form of his personal declaration and a declaration submitted by his father, Daniel Treter (Daniel),[6] in which Treter and his father related the statements allegedly made by these Mall employees. Treter stated that when he attempted to park in a non-handicapped-accessible parking space in the regular Mall parking lot, a parking enforcement employee told Treter that he was required to park in the employee parking lot, and threatened to tow Treter's car and/or issue Treter a citation if Treter did not park in the employee lot.

---

[6] We will refer to Treter's father as Daniel for the purpose of clarity.

12

However, Treter admitted that at that point in time, he successfully parked in a handicapped-accessible parking space in the regular Mall parking lot, and that no adverse action was taken with respect to his car.

Daniel stated in his declaration that on the day following the incident between Treter and the parking enforcement employee, Daniel called the "mall's administration office to inquire about their parking policy as it related to handicapped employees." Daniel stated that he spoke with "Renee," who, Daniel asserted, told him that "handicapped employees could not park in a regular, non-handicapped parking stall."

The trial court sustained Plaza Bonita's evidentiary objections to Treter's evidence regarding the statements alleged to have been made by the mall employees, on the ground that the statements constituted inadmissible hearsay. Without this evidence, the only evidence in the record with respect to the Mall's employee holiday parking policy is the evidence submitted by Plaza Bonita, which establishes a nondiscriminatory policy.

On appeal, Treter argues that the trial court abused its discretion in refusing to admit the evidence of the Mall employees' statements, contending that the evidence was admissible pursuant to three separate exceptions to the hearsay rule. Specifically, Treter contends that the employees' statements were admissible as inconsistent statements by witnesses, as evidence of the employees' states of mind, and as admissions of a party opponent. Upon review, we conclude that the trial court did not abuse its discretion in excluding on hearsay grounds the evidence regarding the statements that Treter alleged the two Mall employees made to him and to Daniel.

13

It is clear that the statements in Treter and Daniel's declarations that they attribute to the Mall employees constitute hearsay evidence: " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200.) Treter submitted the alleged statements to prove that the Mall was not "exempting" him from the employee parking policy, as it was supposed to do under the policy's written terms. The statements thus come within the definition of hearsay and are not to be admitted unless they fall within an exception to the hearsay rule. No such exception applies here.

Treter was not offering the statements as inconsistent statements under Evidence Code section 1235, which provides that "[e]vidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." Because the statements were not offered to show any inconsistency in these employees' testimony at a hearing, they are not admissible as inconsistent statements.

Nor are the statements admissible as evidence of the declarants' state of mind. Evidence Code section 1250 provides that the out-of-court statement of a declarant about his or her "then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) is not made inadmissible by the hearsay rule when: [¶] (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or [¶] (2) The evidence is offered to prove or explain acts or conduct of the declarant." Treter was not offering the statements to

14

demonstrate the employees' states of mind, but instead, was attempting to establish that the employee holiday parking policy was being applied to him despite the fact that as a disabled employee, he was supposed to be exempt from the policy. The statements were therefore not admissible under the state-of-mind exception to the hearsay rule.

Finally, Treter contends that the employees' statements are admissible as admissions by a party opponent. Evidence Code section 1220 provides that "evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity." A corollary provision in Evidence Code section 1222 states: "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if: [¶] (a) The statement was made by a person authorized by the party to make a statement or statements for him concerning the subject matter of the statement; and [¶] (b) The evidence is offered either after admission of evidence sufficient to sustain finding of such authority or, in the court's discretion as to the order of proof, subject to the admission of such evidence."

It is clear that in order for a statement to qualify as an authorized admission under Evidence Code section 1222, there must be a foundational showing that the declarant was authorized to speak on behalf of the defendant. (*Rochlis v. Walt Disney Co*. (1993) 19 Cal.App.4th 201, 217.) The substantive law of agency determines whether or not a statement is an *authorized* admission. (*O'Mary v. Mitsubishi Electronics America, Inc*. (1997) 59 Cal.App.4th 563, 570.) The authority of a declarant employee to make a statement on behalf of an employer can be either implied or express. (*Id.* at p. 570.)

15

"[T]he determination requires an examination of the nature of the employee's usual and customary authority, the nature of the statement in relation to that authority, and the particular relevance or purpose of the statement." (*Ibid.*)

Treter assumes that both of the declarants whose statements he wishes to have admitted in evidence were authorized to speak on behalf of Plaza Bonita on this issue. However, he presented no evidence of either person's authority to make a statement on behalf of Plaza Bonita with respect to the employee holiday parking policy.[7] Thus, there was no foundation that either of these people was an agent of Plaza Bonita or that either was authorized to speak on Plaza Bonita's behalf with respect to the parking policy. The trial court did not abuse its discretion in declining to consider these statements, given their hearsay nature.

Based on the admissible evidence presented to the trial court, no triable issues of fact remain regarding whether Plaza Bonita discriminated against Treter as a result of its employee holiday parking policy.

C.    *The trial court erred in concluding that Treter could not establish his Unruh Act violation claim based on the alleged lack of adequate access aisles and accessibility routes*

Treter alleges in his complaint that the Mall's handicapped-accessible parking suffered from a number of architectural barriers which, he asserted, denied him equal access to the Mall. Among the barriers to access that Treter alleges are that the Mall had handicapped-accessible parking spaces without access aisles, that the access aisles for

---

7    In fact, there was no evidence at all presented regarding the identity of the person Treter refers to as "Renee."

16

other handicapped-accessible spaces did not comply with applicable standards (i.e., they were directed toward inaccessible entrances), and that some of the access aisles adjacent to handicapped-accessible parking spaces were directed to routes that did not have curb cuts or ramps.

In support of its motion for summary judgment, Plaza Bonita submitted evidence in the form of Haney's expert declaration in which she stated that at the time she surveyed the Mall, it did not suffer from these alleged architectural barriers. Haney's declaration established that at the time she surveyed the Mall, it had a sufficient number of handicapped-accessible parking spaces as required under the ADAAG, that those handicapped-accessible parking spaces were properly located within the Mall's various parking lots, that all of the handicapped-accessible parking spaces are accompanied by access aisles, and that all of the accessibility routes were directed properly and there was a curb ramp wherever a route crossed a curb. In response to this evidence, Treter argued that there remained a triable issue of fact "whether or not the Mall's handicapped accessible aisles are in violation of the ADAAG." Treter offered as evidence contradicting Plaza Bonita's expert evidence an "Accessibility Survey Report," which was apparently prepared by someone named Jon Rose and attached to a declaration submitted by Treter's attorney.

The trial court did not accept Treter's proffered evidence, concluding that the "Accessibility Survey Report" had not been properly authenticated. Given that Treter failed to present any admissible evidence to rebut Plaza Bonita's evidence, the court determined that there was no triable issue of fact with respect to this claim.

17

On appeal, Treter argues that "[t]he evidence submitted [by Plaza Bonita] was regarding the access aisles from the expert in 2012" and that this evidence "did not contradict the evidence of [Treter's] deposition . . . that they violated the ADAAG in 2009." We agree.

Haney attests in her declaration that she was retained by Plaza Bonita "[o]n or around January of 2012." She was "instructed to inspect the architectural barriers alleged in Plaintiff's complaint and identify whether any of the alleged items were found not to be in compliance with the Americans With Disabilities Act Accessibility Guidelines ('ADAAG')." Haney states that she "conducted [her] survey and . . . found that all of the complained of conditions in Plaintiff's complaint comply with the ADAAG." The declaration is signed by Haney and is dated March 8, 2012. Thus, assuming that Haney conducted her survey of the Mall immediately upon being retained by Plaza Bonita, her declaration establishes that *as of January 2012*, the Mall's handicapped-accessible parking spaces and accompanying access aisles met the ADAAG requirements. However, her declaration does not establish that the Mall's parking lots met the requisite standards as of late 2009 and into January 2010, which is the time period during which Treter alleges that the parking lots did not meet those standards.[8]

_____

8    Treter filed his complaint on January 14, 2011. Although the complaint is less than specific about the time period during which Treter alleges that he found the Mall to be inaccessible to him due to problems with the access aisles in the parking lot, there is nothing in the record to indicate that Plaza Bonita challenged the specificity of the complaint prior to moving for summary judgment or moved to strike Treter's allegations about the access aisles for lack of specificity. We therefore construe the allegations of the complaint regarding the access aisles as encompassing the time period between May

18

Jones's declaration does not assist Plaza Bonita with respect to the accessibility aisle issues raised by Treter's complaint. Jones does not state that the Mall's parking lots had not been altered between January 2010 and January 2012, nor does she make any other claim as to the state of the Mall's parking lots, or the handicapped-accessible parking spaces and accompanying access aisles, during the relevant time period.[9]

Plaza Bonita thus did not submit *any* competent evidence that could establish that it was entitled to summary judgment with respect to the allegations that Treter raises in his complaint about the inadequacies of the access aisles and access aisle routes to accessible entrances in late 2009/early 2010. In the absence of evidence demonstrating that Treter cannot establish one or more elements of his cause of action, or that Plaza Bonita has a complete defense to each cause of action, summary judgment in Plaza Bonita's favor is not warranted.

Plaza Bonita also suggests that Treter does not have standing to assert damages for the failings in any access aisles in the Mall's parking lot because he did not demonstrate that the access aisle barriers about which he is complaining were "related to his

---

2009, which is the earliest date that Treter indicates he could not properly access the Mall, and the filing of the complaint in January 2011.

[9] It is questionable whether Jones could have attested to such facts, given that she states in her declaration that she had been the general manager of the Mall for one year, and had previously been employed as the manager of five other shopping centers owned by Westfield LLC. Since Jones signed her declaration on March 8, 2012, placing her employment as the Mall's general manager as beginning in March 2011, it does not appear that Jones would have had personal knowledge of the state of the Mall's parking lot and handicapped-accessible parking spaces as of late 2009 and early 2010, the relevant time period for purposes of Treter's complaint.

disability."  (See *Chapman, supra,* 631 F.3d at pp. 947-948 [to demonstrate the existence of an injury-in-fact for purposes of federal standing under the ADA, a plaintiff must demonstrate an encounter with the noncompliant barrier that is related to the plaintiff's disability].)

Treter alleges in his complaint that he suffers from "Scoliosis, Kyphosis, Chronic Fatigue Syndrome, and Arnold Chiari Malformation Type 1, and sometimes requires the use of a wheelchair."  He further alleges that "[o]n numerous and separate occasions" Plaza Bonita "failed to make the Westfield Bonita Plaza [*sic*] mall accessible" to him due to problems with the access aisles and accessibility routes.  Plaza Bonita contends that Treter "conceded that during the time period relevant to his complaint—when he worked at Magic Bug—he did not use a wheelchair."  This is not an accurate statement.  It is true that Treter admitted during his deposition that he did not use the wheelchair to get to work when he worked at Magic Bug.  However, immediately after making that statement, Treter was asked whether he "had to go to the mall using a wheelchair."  Treter responded in the affirmative and indicated that he had done so "[m]aybe 20 [times]."  The evidence thus clearly does not definitively demonstrate that Treter did *not* use a wheelchair when going to the mall; rather, at a minimum, the evidence regarding Treter's use of a wheelchair while patronizing the Mall is in dispute.

In view of this evidence, Plaza Bonita has not established that Treter does not have "standing" to allege a violation of the ADA (and resultant Unruh Act violation) based on his complaints about the access aisles in the Mall's parking lots.  He clearly alleges that he sometimes used a wheelchair, including on occasion when he went to the Mall as a

patron. As a result, Plaza Bonita has not established that it is entitled to judgment as a matter of law on Treter's claim that the Mall suffered from architectural barriers that made it difficult for him to patronize the Mall using his wheelchair.

D.     *The trial court did not err in determining that Plaza Bonita demonstrated that Treter could not establish the elements of his Unruh Act claim based on the Mall's locking its automated doors at closing*

Treter alleges in his complaint that Plaza Bonita violated the ADA by locking the handicapped-accessible automatic sliding doors at closing time and requiring him to use the manual doors to exit the Mall. According to the complaint, Treter called the administration office for the Mall to discuss this issue and was told that the sliding doors were not supposed to be locked. He alleges that despite being told that the sliding doors were not supposed to be locked, he continued to encounter locked handicapped-accessible sliding doors after the Mall was closed to the public in the evenings.

In response to Plaza Bonita's evidence that the Mall's policy regarding the locking of the automated doors at closing time was based on safety, and that at each of the entrances there are manual doors that remained unlocked from the inside, allowing patrons and employees to exit the mall, Treter contends that there remains a triable issue of fact as to whether the manual doors "are in violation of the ADAAG." According to Treter, there is conflicting evidence as to whether the Mall's manual entrance doors were ADAAG compliant, because, he maintains, under the ADAAG, these manual doors must require less than five pounds of force to be opened. He asserts that "[t]here is nothing in the opposition to state that the doors required less than five pounds [of force for activation] in 2012 much less in 2009."

21

Regardless whether the manual doors required more or less than five pounds of force to open during the relevant time period, that information is irrelevant to Treter's claim. Contrary to Treter's position in opposition to summary judgment and now on appeal, the ADAAG does not contain a requirement that exterior doors have a push/pull force of less than five pounds to open. The relevant portion of the ADAAG provides:

" 4.13.11[] Door Opening Force. The maximum force for pushing or pulling open a door shall be as follows:

"(1) Fire doors shall have the minimum opening force allowable by the appropriate administrative authority.

"(2) Other doors.

"(a) exterior hinged doors: (Reserved).
"(b) interior hinged doors: 5 lbf (22.2N)
"(c) sliding or folding doors: 5 lbf (22.2N)" (ADAAG, § 4.13.11.)

The doors at issue in Treter's complaint are exterior hinged doors. There is no "maximum force for pushing or pulling open" this type of door under the ADAAG. Rather, that component of the guidelines has been "reserved," indicating that this portion of the guidelines has not been set. Thus, the ADAAG does not contain a maximum force requirement for the exterior doors that Treter used to exit the Mall after closing, and there are no triable issues of fact regarding whether the manual doors that Treter had to use when the automatic doors were locked were ADA compliant under the ADAAG.

22

IV.

DISPOSITION

The judgment of the trial court is reversed.  The parties are to bear their own costs on appeal.

_____

AARON, J.

WE CONCUR:


_____

NARES, Acting P. J.


_____

O'ROURKE, J.

23